# FINNERTY ET AL. V. FRITZ.

1.  If an agent act for both parties in the same transaction, he cannot recover commissions from either, unless the parties knew and assented to his acting for both. Nor can an agent become the purchaser without the knowledge and assent of the seller, nor if he be employed to purchase can he be himself the seller.

2.  The general rule is, that the duties of an agent continue, and commissions are not due until he has effected a bargain and sale by a contract which is mutually binding on vendor and vendee. But when the agent produces a purchaser acceptable to the owner and able and willing to purchase on terms satisfactory to the owner, the agent has performed his duty, and, if through the fault of the owner, the sale is not consummated, the agent may recover his commissions.

3.  A title bond executed by the owner of the property, that only gives to the obligee an option to purchase, but not being a mutual obligation binding upon both contracting parties, is enforceable only by acceptance and performance of its conditions during the continuance of the option.

4.  Where an agent to sell negotiates such conditional sale as between himself and his principal, the execution and delivery of such title bond to the purchaser or obligee, may be regarded as a sale of the property during the option; and the agent may negotiate a sale of the same property for the obligee without forfeiting his commissions. But if the agent, concealing from the obligee his agency to sell, induce the latter to undertake, in connection with himself the purchase of the property, such concealment being obnoxious to the rules of public policy, will avoid his commissions, whether the seller knew of the double relation or not.

*Appeal from District Court of Arapahoe County.*

THE facts are stated in the opinion. The plaintiff in the court below had judgment.

Messrs. H. M. and W. TELLER, and Mr. G. B. REED, for appellants.

Messrs. WELLS, SMITH & MACON, for appellee.

BECK, J. The most important questions raised by the assignment of errors in this case involve the subject or agency,

and the principles which must control the conduct of an agent in transactions between himself and his employer, and in his transactions with third persons in respect to the subject-matter of his agency.

The general principles of law applicable to real estate brokers appear to be well settled, and rules defining their duties have been laid down and sanctioned by a long course of judicial decisions, but difficult questions often arise whether or not a given state of facts bring the agent within a rule which imposes a forfeiture of commissions for misconduct. On such questions some contrariety of opinion exists. The weight of authority favors a stringent application of these rules to all cases falling clearly within their reason; but as to all other cases, whenever it is made to appear that the agent is the procuring cause of the sale, the law leans to that construction which will best secure the payment of his commissions rather than the contrary.

As applicable to the case under consideration, it may be observed that it is a well settled rule that the same person cannot be both agent of the owner to sell, and agent of the purchaser to buy, for the reason that the interests of buyer and seller necessarily conflict, and the same agent cannot serve both employers with efficiency and fidelity. The interest of the agent conflicts with his duty in such case. His duty to the vendor to sell for the highest price is wholly incompatible with his duty to the purchaser to buy for the lowest price, and these inconsistent relations, if assumed, would expose him to the temptation to sacrifice the interests of one party or the other, in order to secure his double commissions. Wherefore, it is the established policy of the law to remove all such temptations, and to this end, every contract whereby an agent is placed under a direct inducement to violate the confidence reposed in him by his principal, is declared to be opposed to public policy, and not capable of being enforced as against any person who has a right to object. The effect of the rule is, that if an agent act for both parties in the same transaction,

he cannot recover compensation from either, unless the parties knew and assented to his acting for both. The rule cannot be avoided by proof that no injury has resulted from his double dealing, for the policy of the law is not remedial of actual wrong, but preventive of its possibility.

It is equally well settled that an agent to sell cannot himself become the purshaser without the knowledge and assent of the seller; nor if he be employed to purchase can he be himself the seller. These rules all rest on grounds of public policy. *Everhart* v. *Searle*, 71 Pa. St. 256; *Rice* v. *Wood*, 113 Mass. 133; *Lynch* v. *Fallon*, 11 R. I. 311; *Raisen* v. *Clark*, 41 Md. 158; *Lloyd* v. *Colston & Moore*, 5 Bush. 587; *Kerfoot* v. *Hyman*, 52 Ill. 514; *Scribner* v. *Collar*, 40 Mich. 378.

Illustrative of the character of cases not falling within the reason of the foregoing rules, and which constitute exceptions thereto, we note that it is held if an agent or broker act openly for owner and purchaser, with the knowledge and assent of both, each having contracted to pay him a commission, he may recover the stipulated compensation from both parties; so also, if an agent be employed to sell at a stipulated commission, he may offer himself as a purchaser, and if accepted as such under the contract to pay commissions, he may purchase and be entitled to retain from the purchase-money an amount equal to his commissions; or if employed to purchase, the employer stipulating to pay him a given sum for the property, regardless of its cost to the agent, the sum so agreed upon may be recovered.

Again, if the extent of the agency be merely to bring the contracting parties together, and does not involve the duty of negotiating for either, the agent is termed a middleman, and may contract for and recover commissions from both. *Stewart* v. *Mather*, 32 Wis. 344; *Shepherd* v. *Hedden*, 29 N. J. L. 334; *Mullen* v. *Keetzleb & Lampton*, 7 Bush, 253; *Herman* v. *Martineau*, 1 Wis. 151; *Siegel* v. *Gould*, 7 Lans. 178; *Anderson* v. *Weiser*, 24 Iowa, 430; *Merriman* v. *David*, 31 Ill. 404.

Appellants insist in this case that the evidence shows Fritz, the plaintiff, to have been guilty of such gross misconduct as forfeits all claims he may have had against them for commissions.

It is shown by the record that on the 28th day of October, 1878, the appellants executed to Davies a bond, conditioned to convey unto him the Little Chief mine at Leadville, provided he paid the sum of $300,000 purchase-money therefor, in thirty days; and containing also a stipulation for an extension of thirty days, on payment of the sum of $25,000 as a forfeit, in the event that the purchase should not be consummated. On the succeeding day Davies and Fritz entered into an agreement in writing, associating themselves together as partners in the business of buying, selling and trading in mining property, and containing the following stipulation concerning the mine in question: "And it is further expressly agreed that the said Jacob S. Fritz is to have and receive one-third share of the gross net proceeds, free from all cost and expense, that may be received and realized, over and above the respective amounts mentioned in certain bonds for the sale of the Little Chief mine and the Union lode, in California mining district, in said county of Lake, said bond having been made to the said John Davies by the parties therein named respectively, on the 28th day of October, A. D. 1878."

Subsequently, it becoming evident that the sum named in the bond as forfeit-money would have to be raised, since a sale of the mine could not be effected within the first thirty days, Davies and Fritz entered into an agreement with Oviatt and Cooper to share with them the profits which might be realized in a sale of the mine, upon condition that the latter parties advance the $25,000 forfeit money. The money was raised under this arrangement, and paid to the appellants on the 26th day of November. The bond was assigned to Oviatt & Cooper, and appellants executed to them a deed of the mine, bearing date the 26th day of November, 1878, and placed the same in escrow, to be delivered on payment of the balance of the pur-

chase-money.   On the 23d day of December, 1878, a sale was effected under the Oviatt & Cooper deed, of three-fifths of the mine for the sum of $300,000, to John V. Farwell and other Chicago parties.   On the same day the entire property was conveyed to Wirt Dexter, in trust for all parties interested, the trust deed securing to Davies, Fritz, Oviatt, Cooper and George R. Clark—the latter being a partner of Oviatt & Cooper—two-fifths of the mine in certain proportions, the trust to be executed after the Chicago parties should be reimbursed, the $300,000 purchase-money and expenses, out of the proceeds of the mine.

Davies testified on part of the appellants that an understanding was arrived at between himself and Fritz to procure the bond and share in the profits to be realized upon a sale of the mine, before the bond was executed; and that this understanding or agreement was reduced to writing afterwards; also, that at the time of these transactions he was not aware of the fact that Fritz was expecting to receive commissions from the appellants.   Fritz, on the contrary, testified that he told Davies that he expected to be paid commissions, and he further testified that he had no agreement for an interest in the bond, until after the terms and conditions of the contract with Davies were all settled by the execution and delivery of the bond.   He also testified to having informed Finnerty subsequently to the giving of the bond, that he expected to acquire a contingent interest in the property.   This statement is denied by Finnerty.

We have no hesitation in declaring, as a proposition of law, that if Fritz exerted his influence with appellants to procure the bond in the name of Davies, in pursuance of a secret understanding with Davies, that the bond when obtained should be held for their joint benefit, that such conduct was an exercise of bad faith toward the appellants, amounting to a fraud in law. It was an abandonment of his agency, and upon discovering the facts, appellants had the same right to regard him as a purchaser with Davies, as if his name had been inserted in

the first instance as an obligee in the bond. It was an attempt to assume the relations of both agent and purchaser without the knowledge and assent of the sellers, and if the facts are proven, the misconduct constitutes a bar to the recovery of commissions. In the case of *Stewart* v. *Mather*, *supra*, Chief Justice Dixon, speaking for the court, concerning this double relation of agent and purchaser, very pertinently observes:

"The relations are wholly incompatible with each other, and cannot be combined in the same person. The law will not permit it. Assuming the character of purchaser, the person so acting necessarily abandons that of agent, and can claim nothing in the latter capacity in his negotiations with his former principal."

If, however, the fact should be found as sworn to by Fritz, that no understanding or agreement was made whereby he was to be interested in the bond until after its delivery to Davies, we are of opinion that the foregoing principles are inapplicable to the facts. We will, therefore, consider next how the law should be administered upon this hypothesis.

The general rule undoubtedly is, that the duties of the agent continue, and commissions are not due until he has effected a bargain and a sale by a contract which is mutually binding on both vendor and vendee. *Love et al.* v. *Miller*, 4 C. L. J. 152, and authorities cited.

But where an agent has produced a purchaser who is acceptable to the owner, and able and willing to purchase on terms satisfactory to the owner, he has performed his duty, and if from any failure of the owner to enter into a binding contract or to enforce a contract against the purchaser, the sale is not completed, the agent may recover his commissions. Parsons on Contracts, 90; *Moses* v. *Bierling et al.* 31 N. Y. 462; *Phelan* v. *Gardner*, 43 Cal. 310.

The sale in this instance was not complete upon the execution of the bond, owing to the peculiar nature of the instrument; and the duties of the agent, therefore, continued for

certain purposes. But they did not continue for the purpose of negotiating a sale for the appellants. That branch of his duty was fully performed, and as to. it he was discharged. It remained for the agent to do what he could to consummate the sale contracted, and any act of his which would interfere with its consummation would be a breach of his duty. The reason that the commissions were not due upon the execution of the contract of sale, was that this contract was not mutually obligatory upon both vendor and vendee, and because the purchaser produced was not willing to enter into a contract of this nature. The bond in question was one of those ordinary title bonds so extensively employed in the mining regions of this State, by means of which those desiring to speculate in mines before purchasing the same outright, procure from the owners an option to buy on payment of a stipulated price, within a fixed period of time. The obligor binds himself to execute a deed to the obligee on performance of the condition; no obligation is executed by the obligee. If the contract proves advantageous to the obligee, he pays the purchase-money and receives a deed; otherwise he suffers the time for performance to lapse.

So far as the owner of the property and his agent are concerned, the execution of such instrument is to be regarded, during its existence and prior to default, as a sale of the property. Neither can execute any other sale in the name of the former proprietor. But the obligee may contract a sale of the property on his own account, and at any price he can obtain by virtue of the title he is to acquire under his bond. He may likewise employ an agent for such purpose, and unless the duties of such agency would conflict with the interests of the obligor in the bond, he may employ for this purpose the same person who, as agent of the owner, brought the property to his notice, and through whose influence the obligee became interested therein.

What could there be in this new relation of the agent which would be inconsistent with the interests of his former principal, and his continuing duty in respect to the completion of

the former sale? We have seen that no duty remains as to a further or other sale, and that in respect to such duty he is discharged. The price, terms and conditions of the sale are all settled, and have been inserted in the bond. As to these matters no discretion or duty remains. A sale of the property under the bond to other parties, is contemplated by the bond itself; hence the act of assisting the obligee in such sale is not prejudicial to the interests of the obligor; neither does it necessarily conflict with the consummation of the first sale, but is much more likely to be in furtherance thereof, as the effect of a resale is to realize the money which is to mature upon the bond. There is, therefore, nothing inconsistent in the new relation; and if the agent may become the agent of the purchaser in such case, he may for the same reasons, become jointly interested with the purchaser after the execution and delivery of the bond, without on that account forfeiting his claim for commissions. These views are sustained by the following authorities: Story on Agency, Sec. 31; *Short* v. *Miller*, 68 Ill. 292; *Hinckley* v. *Arey*, 27 Me. 364; *Munn et al.* v. *Burgess*, 70 Ill. 604; *Wortman* v. *Skinner*, 1 Beasley, N. J. 358; *Bochlert et al.* v. *McBride*, 48 Mo. 506; *Pridgen* v. *Adkins*, 25 Texas, 394.

No specific instructions were given upon either of the foregoing propositions, respecting the relations which Fritz sustained to the appellants, or his conduct towards them; and in view of the testimony, we think the jury was not sufficiently advised upon these points. It is true no such instructions were prayed by the defendants, but the court rejected instructions which were prayed on the subject of appellees' misconduct, and gave others instead, upon its own motion. In such case it became the duty of the court, not only to instruct correctly but fully on the subject. The instructions so given were excepted to, and error assigned thereon, and, as we have seen, they omit to cover material points upon which the recovery may have depended.

Referring now to the relations which Fritz sustained to the

purchasers, as bearing upon his right to recover commissions, we are of opinion that the doctrine of public policy was carried too far in the instructions given on this point. The appellants were not prejudiced by this error, but in view of the fact that the cause must be returned for another trial, we deem it proper to express our views on the point.

The inquiry whether Fritz forfeited his right to claim commissions by reason of assuming inconsistent relations to the purchasers, should have been limited to the original contract of sale. We have attempted to show that his employers were not legally interested in any other; that it was a matter of indifference to them what future contracts should be made, or by whom they should be made; their remaining interest was simply the payment of the purchase-money named in the bond, and if paid, it was wholly immaterial to them whether it came from the private funds of Davies, from the moneys of Oviatt & Cooper, or whether it was advanced by the Chicago parties. Holding as we do, that if Fritz procured his interest in the bond in good faith after its execution, and not in pursuance of a secret understanding or agreement previously made with Davies, that both Davies and Fritz might enter into any contract with other parties respecting the property which they might be able to effect, not inconsistent with the terms of the bond, it results that such contracts would be separate transactions, wholly independent of the original transaction out of which this controversy has arisen, and between different parties. It would be foreign to the present investigation to inquire what relations appellee sustained to such other parties growing out of subsequent transfers affecting the property. Such inquiries might become pertinent in a litigation directly involving such transfers, and between the parties thereto.

Whether Fritz occupied the relation of agent to Davies depends upon a question of veracity between them, and upon this point no error is perceived in the instructions. If Fritz, concealing from Davies his agency to sell for the owners, induced Davies to undertake, in connection with himself, the

purchase and sale of the mine under an agreement to divide between them the profits arising from the transaction, such facts bring Fritz within the rule of public policy announced by the court, and avoid his commissions, whether the appellants had knowledge of the double relation or not.

We think the court erred in giving to the jury the plaintiff's sixth instruction. Tatem made no unconditional offer to buy the mine at the sum of $260,000. He did not even examine the mine, and the proof that he would have purchased at this price was insufficient to authorize the jury in finding that he was prevented from buying the mine at this sum by the refusal of the owners to sell. Whether the verdict was affected by this instruction or not we cannot know, but it is quite certain that it was improperly given. For the errors mentioned, the judgment must be reversed and the cause remanded.

*Judgment reversed.*

ELBERT, C. J. I concur in the conclusion. I think, however, that it is indifferent whether Fritz's contract with Davies was before or after the execution of the bond to Davies. Its bearing on the rights and interests of his principal is the same in either case, and in either case should be taken as an abandonment of his agency.

The rule, as laid down, points out a method, through the interposition of a nominal purchaser, by which an agent may secure not only his commissions as agent, but any advance over and above the price fixed, for which the property may sell, thus accomplishing indirectly what he may not do directly. Its effect is to increase the chances of fraudulent practices, and diminish the security of the relation of principal and agent.