[No. 2463]

## HARRY H. HUNTER, JR., RESPONDENT, *v.* THOMAS SUTTON, APPELLANT.

[195 Pac. 342; 205 Pac. 785]

1. APPEAL AND ERROR—OPINION OF TRIAL JUDGE NO PART OF JUDGMENT ROLL.

The opinion of the trial judge is no part of the judgment roll and can only be used to aid the supreme court in the proper determination of the appeal. (Per SANDERS, C. J.)

2. APPEAL AND ERROR—ON APPEAL ON JUDGMENT ROLL DIFFERENCE IN FINDINGS RECONCILED AND PRESUMED JUSTIFIED BY EVIDENCE.

Upon an appeal upon the judgment roll alone, it is the duty of the court to reconcile all differences in findings, and it must presume that they sustain the judgment and are justified by the evidence. (Per SANDERS, C. J.)

3. DAMAGES—MOTIVE FOR BREACH IMMATERIAL.

Generally speaking, the motive of a defendant in breaching a contract cannot be inquired into, and the measure of the damages is the same whether it be wilful or malicious. (Per SANDERS, C. J.)

4. VENDOR AND PURCHASER—"OPTION TO PURCHASE" DEFINED.

An option to purchase is a contract supported by a consideration by which one party sells to another the right, at the election of the latter, to purchase certain described property for the price and upon the terms and conditions of the option contract. (Per SANDERS, C. J.)

Points decided

5. MINES AND MINERALS—OPTION CONTRACT TO PURCHASE LAND HELD NOT MUTUAL.

A contract giving parties the option to go on land and extract minerals and to pay for the land out of ore extracted, but not requiring them to take the land, even after electing to assume the contract, *held* without mutuality, notwithstanding that they were ready and able to complete the contract. (Per SANDERS, C. J.)

6. JUDGMENT—FINDINGS HELD NOT TO SUPPORT JUDGMENT FOR DAMAGES FOR BREACH OF CONTRACT.

Where plaintiff averred that rescission of contract was illegal, which was material, and that, by reason of the defendant's attempted revocation and rescission, he had been damaged in a certain sum, and the court found that the contract was for a valuable consideration and that an attempt to revoke was absolutely null and void, a judgment for damages for breach of the contract was not sustained. (Per SANDERS, C. J.)

7. BROKERS—BROKER HELD NOT ENTITLED TO COMMISSION OR DAMAGES, ON REFUSAL TO ALLOW HIM TO EXERCISE OPTION TO PURCHASE, WHERE CONTRACT WITH OWNER WAS NOT MUTUAL.

Where an agent was authorized to sell mining land, and was also given an option to become a purchaser, and the two contracts were considered as one, he was not entitled to a commission or damages by reason of the owner's refusal to permit him to enter on his election to assume the option contract, where such contract was not mutual in that the land was not to be conveyed until paid for out of ore extracted, and he had a right to withdraw any time without liability. (Per SANDERS, C. J.)

8. SPECIFIC PERFORMANCE — VENDOR AND PURCHASER — OPTIONS GIVEN FOR VALUABLE CONSIDERATION IRREVOCABLE AND CAPABLE OF SPECIFIC PERFORMANCE.

Options to purchase land given for valuable consideration are irrevocable and are capable of specific performance. (Per COLEMAN, J.)

9. BROKERS—BROKER SELLING TO SYNDICATE OF WHICH HE IS A MEMBER NOT ENTITLED TO COLLECT COMMISSION, UNLESS PRINCIPAL, KNOWING OF HIS INTEREST, AGREED TO COMPENSATE HIM.

Where broker procures a sale to a syndicate of which he is a member, he cannot collect a commission unless his principal, knowing his interest in the syndicate, specially undertook and agreed to compensate him. (Per COLEMAN, J.)

APPEAL from Sixth Judicial District Court, Humboldt County; *Mark R. Averill,* Judge.

Action by Harry H. Hunter, Jr., against Thomas Sutton. Judgment for plaintiff, and defendant appeals. **Reversed.**

*Booth B. Goodman* (*Moore & McIntosh*, of counsel), for Appellant:

The complaint does not state a cause of action. It cannot be ascertained therefrom whether the suit is brought on the theory of obtaining damages for the loss of probable profits or for commissions earned by a broker, or for both.

Where a case is submitted on two theories, one of which is erroneous, and it is impossible to determine on which theory the court or jury acted, the judgment must be reversed. King v. Post, 21 Pac. 38.

Contract to give another, for a certain time, exclusive privilege to sell land, at an agreed price, best endeavors to sell to be used, is not an option to buy the land. Faraday C. & C. Co. v. Owens, 80 S. W. 1171.

The contracts are void, unilateral contracts, of no force or effect, there being complete lack of mutuality, and they being without consideration. "There can be no action on a contract where the agreements are all on one side." U. & S. R. Co. v. Eerhoff, 21 Wend. 139. "There can be no contract without mutuality." Fenley S. & L. Co. v. Kurz, 34 Mich. 89; Burg v. Harper, 4 Gill & J. 467; Morrill v. Tehama Con. M. & M. Co., 10 Nev. 125; Stiles v. McClellan, 6 Colo. 89; Durant v. Comegys, 28 Pac. 425; 39 Cyc. 1206; Rude v. Levy, 96 Pac. 560; Smith v. Bateman, 53 Pac. 457.

Nominal consideration is insufficient. Velie Motor Co. v. Kopmeier M. Co., 194 Fed. 324; Rude v. Levy, 96 Pac. 560; Berry v. Frisbie, 86 S. W. 558; Murphy v. Reed, 125 Ky. 585; Kellebrew v. Murray, 151 Ky. 345; Stamper v. Combs, 176 S. W. 178; Great West Oil Co. v. Carpenter, 43 Tex. Civ. 229. "A consideration of one dollar will not support a promise to pay more than one thousand dollars." Sheppard v. Rhodes, 7 R. I. 470; Rohwer v. Burrell, 42 Utah, 510; 1 Page on Contracts, 1128.

"A promise is too vague and uncertain to amount to a consideration for the promise of the other party." 13 C. J. 329.

"A promise made conditional upon the will of the promisor is generally of no value." 13 C. J. 634.

There are no findings to support the judgment. Those filed are purely argumentative, few of them being upon issues made by the pleadings. Lockhart v. Mack, 2 Nev. 294.

The plaintiff's reply did not deny the affirmative defense of failure of consideration, which is therefore deemed admitted. 21 R. C. L. 561.

Sale of real estate being involved, a binding contract, signed by the prospective purchaser, is necessary, in addition to such prospective purchaser being ready, able and willing. Mattingly v. Pennie, 39 Pac. 200; Wilson v. Mason, 42 N. E. 134; Gilliland v. Jaynes, 129 Pac. 8.

A broker employed to sell is not entitled to compensation for procuring a purchaser who takes no option on the property. Ward v. Zborowski, 63 N. Y. S. 219; Tousy v. Etzel, 34 Pac. 291; Lawrence v. Pederson, 74 Pac. 1011; Dwyer v. Raborn, 33 Pac. 350; Warnekroo v. Bowman, 128 Pac. 49; Christensen v. Duborg, 150 Pac. 306; 4 R. C. L. 315.

"After a broker has had a reasonable time to find a purchaser, the principal may revoke his authority without incurring any liability." Collier v. Johnson, 67 S. W. 830. "Where a broker employed to procure a purchaser is discharged before procuring a purchaser under the terms authorized, such broker is not entitled to any consideration." Cadigan v. Crabtree, 88 Am. St. Rep. 397.

Purchase by a real-estate agent of property in his hands for sale, without the knowledge of his principal, is sufficient to avoid the transaction, even though there be no fraud or injury to the principal. Butler v. Agnew, 99 Pac. 396; 12 C. J. 692. "The vital principle of the law of agency is said to be good faith, and this prohibits one from acting as the agent of opposing parties." Madden v. Cheshire, 77 Kan. 415; 12 C. J. 692, 2 C. J. 712; Dull v. Royal Ins. Co., 159 Mich. 671; Webb v. Paxton, 36 Minn. 532; Ferguson v. Gooch, 94 Va. 1.

The fact that, unknown to the principal, a member of a firm of brokers employed to sell land belonging to the syndicate to which the land is sold, bars the firm from recovering a commission for the sale, although the price received by the principal was fair and all that he demanded. An agent cannot recover a commission for a sale to himself, in the absence of a special agreement therefor. Hammond v. Bookwalter, 12 Ind. App. 177; Gardner v. Ogden, 22 N. Y. 327.

*R. M. Hardy* and *Cooke, French & Stoddard,* for Respondent:

There is nothing indefinite about the complaint. The decision of the trial court is likewise plain—that the measure of damages was the amount of commissions that should have been paid for making the sale. All the allegations of the complaint make a complete, definite and certain statement of a cause of action.

When respondent had performed his part of the contract, and consummation of the deal was prevented by appellant, the commissions became immediately payable. 4 R. C. L. 315. "In order to entitle a broker under such a contract to receive commission when no sale has actually been consummated, it is incumbent on him to prove that he found a purchaser ready, willing and able to purchase the property on the terms fixed." Mattingly v. Pennie, 39 Pac. 200.

If the agent is the purchaser, his interests are not in conflict with those of the seller when the contract in all its terms and conditions has already been made by the seller, and there is no discretion left to the agent. 2 C. J. 713; German Ins. Co. v. School District, 80 Fed. 367.

"The rule that an option contract based on a consideration is a binding enforceable contract is now recognized and enforced in every jurisdiction." James on Option Contracts, secs. 301, 303. "Clearly under the rule, a promise in the agreement binding on the optionee to perform some act, the performance of which will be

a real benefit to the optionor or a real detriment to the optionee, furnishes sufficient consideration for the agreement." Idem, sec. 314.

The consideration was adequate. "At law, in the absence of fraud or mistake, the slightest consideration is sufficient to support the most onerous contract obligation." James on Option Contracts, secs. 324, 325, 327, 328.

By the Court, SANDERS, C. J.:

This appeal is from a judgment upon the judgment roll alone, in an action brought to recover damages for the alleged breach of several agreements, evidenced in writing, and made the basis of the cause of action. The action was tried by the court without a jury. The court decided the facts to be as stated in the complaint, and directed findings of fact and conclusions of law to be prepared in accordance with its opinion filed, in so far as the opinion passes upon the facts. Upon the findings and conclusions thus prepared and approved, the court rendered judgment in favor of the plaintiff and against the defendant for the full amount of damages demanded, to wit, $9,000, and for $380.50 costs. By reason of the decision upon the former appeal herein, 45 Nev. 427, 195 Pac. 342, the defendant now brings the case here upon appeal from the judgment.

According to the complaint and Exhibit A, made a part thereof, Thomas Sutton, defendant in the court below, appellant here, on the 30th day of June, 1917, in consideration of the sum of $1, to him in hand paid, and for the further consideration of the promises, covenants, and agreements to be kept and performed, granted to Harry H. Hunter, Jr., the plaintiff and respondent, what the parties concede to be an option to purchase eighteen lode mining claims, valuable for their veins of tungsten ore, situate in Humboldt County make the sum of seventy-five thousand dollars ($75,000) paid from the net returns resulting from the milling of

the ore taken from the property, according to the following percentages:

"During the six months from the beginning of operations which shall not be later than September 1, 1917, to March 1, 1918, 25 per cent. From March 1, 1918, to September 1, 1918, 33⅓ per cent. On or after September 1, 1918, until such time as the balance necessary to make the sum of seventy-five thousand dollars ($75,000) has been paid, 50 per cent."

Time is made of the essence of the agreement, and it contains forfeiture clauses and a provision for a deed when the full purchase price has been paid and the conditions performed, reserving title in the optionor until the full purchase price of $75,000 has been paid in the manner provided in the contract. No time is specified in the agreement as to how long the privilege to extract ore to pay the purchase price shall extend, except as may be inferred from the nature, circumstances, and conditions of the contract.

According to the complaint and Exhibit B, made a part thereof, the parties, on the same date, to wit, the 30th day of June, 1917, entered into the following agreement:

"Know all men by these presents: That whereas, Thomas Sutton, the first party has this day made an agreement with Harry H. Hunter, Jr., the second party, for the sale and transfer of eighteen lode mining claims, situated near Mill City, Humboldt County, Nevada, to the said second party, on the understanding that the said second party is going to endeavor to sell the said mining claims to other parties, for the purpose of making a commission on the transaction, the purchase price agreed to be paid by the second party to the first party being seventy-five thousand dollars, now therefore, it is hereby agreed that the first party shall pay to the second party, in the event of his effecting such sale to other parties, twelve per centum (12%) on the purchase price so paid, as the payments are made to the first party or

his agent, said per centum to be paid and accepted as and for the agent's commission on the transaction.

"In witness whereof, the parties hereto have hereunto set their hands, the 30th day of June, 1917.

"Thos. Sutton.
"H. H. Hunter, Jr."

It is alleged in the complaint that on the 31st day of July, 1917, the defendant entered into an agreement with the plaintiff and one J. T. Goodin, amendatory and supplemental to the contract, Exhibit A, and made a part of the complaint as Exhibit C, whereby Hunter and Goodin obligated themselves to work and develop the mining ground at the rate of at least 1,200 one-man miner's shifts in each and every year, beginning September 1, 1917; the work to be done in a minerlike fashion and for the purpose of developing the property as a workable mine, and that any failure to perform the work or to sell ore should operate as a forfeiture of the contract of June 30, 1917, which, by the supplemental agreement, is in all other respects ratified and confirmed.

It is alleged that the time to begin work upon the property was, for a valuable consideration, extended from September 1, 1917, to September 10, 1917, which extension was indorsed upon the cover of the original contract. It is averred that on September 7, 1917, the defendant served upon the plaintiff and Goodin notice, in writing, of his absolute cancelation and rescission of Exhibits A and C, and verbally notified said parties of the rescission and cancelation, which was accompanied by a threat that if they entered upon the premises they would be ejected by force, if necessary. The notice is made a part of the complaint as Exhibit D.

It is alleged that plaintiff, acting under and in pursuance to his agreement, performed services in obtaining and did obtain purchasers of the rights conferred and granted by the agreements, Exhibits A and C; that these purchasers were obtained prior to the breach and cancelation of said agreements, and before the time

provided therein to begin work on the property had
expired, and that said purchasers so obtained were
ready, willing, and able to take and assume said con-
tracts, and all rights thereunder, on the terms therein ·
provided. It is averred that plaintiff paid money to the
defendant, and expended money in good faith, in the ·
course of his acts performed under his agreements and
in his attempt to fulfil his contract, and that the defen-
dant wholly failed and refused to perform his agree-
ments; that his breach thereof was not caused by
plaintiff, and that his cancelation and rescission of his
contracts was against plaintiff's will, requests, and pro-
tests, and was illegal and unlawful; and that, by reason
of the cancelation and rescission of said agreements,
or the attempted cancelation thereof, plaintiff was dam-
aged in the sum· of $9,000, and demands judgment
against the defendant for that amount.

Upon the overruling of the demurrer to the complaint,
the defendant for answer alleged his admission of the
contracts, exhibited with, and made a part of the com-
plaint, and in this connection alleged, in substance, that
the original contract, Exhibit A, was made to run to
plaintiff as the representative of the H. M. Byllesby Com-
pany, and the agreement, Exhibit B, was entered into
with the understanding that in the event said company
failed to accept the offer left open by the contract, both
agreements should be at an end; that said company did
refuse and decline to consider the offer, and that, at the
time this action was brought, said agreements were of
no force or effect. The answer admits contract, Exhibit
C, and for a separate defense the defendant alleges that
the contracts, Exhibit A and Exhibit C, were without
consideration and of no force or effect. It is averred
generally that plaintiff failed and refused to comply
with his agreements, and that, for the reasons stated
in the defendant's notice of revocation of the contracts,
made a part of the complaint, he canceled and rescinded
the same, and that, at the time of the commencement
of this action, they were of no force or effect.

The reply consists of specific demands and a demurrer to the defense, upon the ground that it does not state facts sufficient to constitute a defense.   The demurrer is disposed of in the findings.   It appears that the action was filed on September 9, 1917, and set for trial on the 19th day of July, 1918, and that, on the day before the time set for trial, the plaintiff was allowed, upon motion, to amend his complaint by adding thereto a clause, in substance, and to the effect, that, since the revocation of the contracts, the defendant had disposed of his interest in the property, and since said date had extracted valuable ore therefrom, and that the mining claims were of great value.

1.   The findings follow closely the averments of the complaint, and, they contain specific findings negativing the facts alleged in the answer of the defendant; they also seem to reflect the opinion of the trial court upon the evidence, the weight of the testimony, and its views as to the law applicable thereto.   It is well settled that the opinion of the trial judge is no part of the judgment roll, and that it can only be used to aid this court in the proper determination of the appeal.   But as both sides refer to the opinion of the court, and use it as a key to assist in finding some theory upon which to reverse or to affirm the judgment, they not having had anything to do with the formation of the pleading, the opinion is likewise here used to assist in determining the principle on which the damages were assessed.

The prominent features of the findings and the conclusions of law may be summarized, in brief, as follows: The contract, Exhibit A, was procured for the benefit of the H. M. Byllesby Company, dealers in tungsten ore, who, because of the condition of the money market, refused to consider the contract, which fact was communicated to the defendant, who shortly thereafter became very much dissatisfied with the contract and expressed his dissatisfaction, and because thereof the contract was altered and amended so as to run jointly to the plaintiff and J. T. Goodin, but it did not change

the contract except in the particulars that said parties obligated themselves to perform 1,200 shifts of work on the property during each year, and, in the event of their failure to do the work or to sell the ore, the contract was to be at an end.

After the alteration and amendment of the contract, the time in which the parties had to begin work upon the property was extended to September 10, 1917, and plaintiff formed what is called the "First Syndicate," to take over the property under the terms and conditions of the contracts. The defendant objected to doing business with one of the parties, and the plaintiff thereafter formed what is called the "Second Syndicate," which was acceptable to the defendant, who knew of its plan and purpose to comply with the terms and conditions of the contracts. This syndicate was composed of plaintiff and Goodin and two others.

Thereafter the defendant, on the 7th day of September, 1917, revoked and canceled the contracts, Exhibit A and Exhibit C, and the revocation thereof was without just cause or excuse, done for the defendant's own gain, and he profited greatly thereby, in that he afterwards extracted from the mining claims ore of the value of $116,000, and sold the property in September, 1918, for the sum of $375,000.

The court finds that the plaintiff was not restricted to the Byllesby Company alone in the performance of his agency agreement in his endeavor to sell the property, but that he might dispose of it to others, and that the agency agreement was not affected by the refusal of said company to accept the contract, or in any way whatsoever, and that the plaintiff obtained purchasers (the "Second Syndicate"), prior to the revocation, ready, willing, and able to take and assume the contracts and comply with the terms and conditions thereof.

The conclusions of law are that the contracts were not without consideration; that the revocation thereof was null and void; that the defendant's act in prohibiting

plaintiff and his cooptionee Goodin from entering upon the property with a threat to eject them by force was an illegal act; and that the plaintiff had been damaged in the sum of $9,000.

2.  Counsel for the respective parties approach the consideration of the judgment from different angles, and there is such a wide divergence between them as to the principles on which the damages were assessed, and as to the theory on which the case was tried, that their argument furnishes but little assistance in determining the merits of the appeal.  But it is the duty of this court to reconcile all differences in the findings, and it must presume that they sustain the judgment and that they are justified by the evidence.  The difficulty and confusion in the case may be attributed to the fact that the gravamen of the complaint is that the defendant, by his wrongful cancelation, or attempted cancelation and revocation of the several agreements upon which the cause of action is grounded, and the wrong or injury done entitles plaintiff to be recompensed in damages for the consequences immediately flowing from the wrong or injury; these consequences being that the plaintiff and Goodin were prevented from exercising the privilege of extracting ore from the property, and the plaintiff, as agent, by the revocation of the contract, was cut off and deprived of his commission, and his legal rights under the agreements being thus violated, he was entitled to be compensated in damages for their violation.  Yet the case was apparently tried (at least it is so argued here) upon the theory that it was an ordinary action to recover damages for the breach of a single and indivisible contract whereby the plaintiff was in the first instance constituted the defendant's agent to sell the mining ground, and subsequently was given an option to become a purchaser of the property placed in his hands for sale.

The findings show that the contract was breached, and that plaintiff elected to stand on the breach.  They

tend to show that plaintiff occupied the dual status of a purchaser and agent; and, in estimating the damage for the breach of both features of the contract, the court considered plaintiff's rights both as a purchaser and as an agent. It is inferable from the findings, read in the light of the court's exhaustive opinion, that the defendant's act in rescinding his binding agreements was not only hurtful, but wrongful, and was done for his own gain, and in consequence thereof the defendant had made it impossible for plaintiff to reap any profits from the exercise of the privileges afforded by the contract, or to be remunerated for his services in obtaining himself, his cooptionee, and two others, ready, willing and able to take and assume the contracts and comply with their provisions; and the wrongful revocation of the contracts being for the defendant's own gain, the court manifestly took into consideration his motive for breaching the contracts.

3. If the contract be a single and indivisible one, the motive for its breach was immaterial and could not enter into the award and assessment of damages, for the reason that, speaking generally, the motive of a defendant in breaching a contract cannot be inquired into, and the measure of the damages is the same whether it be wilful or malicious. 8 R. C. L. 452, 453, sec. 22. But it is manifest from the opinion of the court, read in connection with its findings, that the motive and perfidy of the defendant influenced the court throughout its deliberations.

4. Both the trial court, and counsel in this court, treat the contracts, Exhibit A and Exhibit B, as one and as being an option to purchase. This, in a certain sense, is true. The option feature, in the first instance, granted the optionees the right to elect to accept an offer binding on the vendor alone; but, when the parties elected to take and assume the contract, the material question is: What was their status and their rights under it? It is manifest that the contract was an executory, unilateral

agreement, whereby the parties were granted the privilege of entering into the possession of the property on a day certain, and paying the purchase price of $75,000 out of mineral to be produced, which was a thing not in esse, but forming a part of the earth. The contract contains no provision by which the production of the ore could be compelled, and there was no obligation on the part of the vendor to convey until the purchase price had been thus paid and the conditions named performed. It gave the prospective purchasers the privilege of extracting ore. It conferred upon them no interest in the property; its covenants did not run with the land. It did not create an equitable title, but might ripen into such when the purchase price had been paid and the conditions performed. An option to purchase is defined to be a contract, supported by a consideration, by which one party (the optionor) sells to another (the optionee) the right, at the election of the latter, to purchase certain described property for the price and upon the terms and conditions of the option contract. James on Option Contracts, sec. 101.

5. Eliminating the confused phraseology of the contract, it appears from an observation of its terms that its option feature was confined to the privilege of extracting ore, but in its essence the contract was an executory, unilateral agreement. Upon the parties' election to assume the contract, they were not purchasers in the sense of vendees. They had the right to withdraw from the contract at any time, without any liability. The vendor was bound, but the prospective purchasers were not. They, as above stated, were not bound to produce ore, neither was there anything in the contract to compel them to do so. The contract was not mutual. It is evident that, as a matter of law, their readiness and ability to complete the contract or its revocation could not convert it, an unenforceable contract, into a binding and effective contract of sale; yet the judgment is grounded upon the theory that it did.

Furthermore, it is alleged in the complaint that the revocation of the contract, or its attempted rescission and revocation, was illegal; and the court finds, as a conclusion of law, that the contract was for a valuable consideration, and its revocation was absolutely null and void. If this be a correct conclusion of law, it is in effect a holding that, though the contract was breached, nevertheless the breach was null and void and of no legal effect whatsoever. Hence I am unable to understand how, if the contract was never rightfully or legally revoked, the court could, as a matter of law, award plaintiff damages of $9,000 for its breach, when in law it was not revoked.

6. But it is suggested that the decisions of this court are to the effect that the provision in the statute, requiring the facts found and the conclusions of law to be separately stated, is directory, and it is held in California that an erroneous conclusion of law constitutes no cause for reversal if the judgment was right. Spencer v. Duncan, 107 Cal. 423, 40 Pac. 549. In the case at bar, however, the plaintiff avers that the rescission of the contract was illegal, which was a material averment, and that by reason of the defendant's attempted revocation and rescission thereof he had been damaged in the sum specified. The findings being in conflict and inconsistent on material points, the judgment cannot stand. Estep v. Armstrong, 91 Cal. 659, 27 Pac. 1091; Learned v. Castle, 78 Cal. 454, 18 Pac. 872, 21 Pac. 11; Southmayd v. Berry, 2 Cal. Unrep. 322, 3 Pac. 893.

7. But it is argued that the judgment must be affirmed upon a well-recognized rule of law that controls the relation between principal and agent, namely, that when an optionee is ready and willing to exercise the option, but is prevented by the refusal of the owner to comply with his agreement, the agent is entitled to his compensation. 4 R. C. L. 315, sec. 53. It has been the endeavor to make it clear that the case at bar does not fall within this rule, for the reason that the contract,

upon which the plaintiff claims a commission was not one by which the parties were mutually bound. The optionees were merely granted the personal privilege of exploiting the property to extract ore or not, as they pleased; they were at liberty to withdraw from the contract at any time without liability. In this situation, I am clearly of the opinion that, upon the revocation of such a contingent, uncertain, and speculative contract, the plaintiff could not recover any commission. If, upon the election of the optionees to assume to complete the contract, they acquired an interest in the property, this position might be untenable. Paul v. Cragnaz, 25 Nev. 293, 59 Pac. 857, 60 Pac. 983, 47 L. R. A. 540.

It is argued that, if the defendant by his revocation had not made it impossible for the proposed purchasers to complete the contract, the agreed commission would have been paid. A sufficient answer to this argument is that it makes the contingent and conditional elements of the contract more apparent and material. The parties may have expected that the property would produce ore of such quality as to eventually consummate the contract within a reasonable time; but, nevertheless, plaintiff's commission was dependent upon a contingency that might never happen, and he brought his action before it did happen. The result of the judgment is that, in so far as the breach of the agency agreement is concerned, it places plaintiff in a better position with respect to his compensation than he would have been in if the contract had not been broken. In no case can this be done. 8 R. C. L. 434, sec. 9.

Referring again to the statement above made, that the contract was not one by which the parties were mutually bound, due consideration has been given that line of authorities holding that the doctrine of mutuality is modified in actions for the specific performance of option contracts. Consideration has also been given the rule that, unless there is an agreement to the contrary, a broker is entitled to his compensation when he has

performed the service he was employed to perform, whether the contract upon which he claims his commission fails of consummation by some fault of the principal or not.

Entertaining the view that the findings and conclusions do not support the judgment, it is unnecessary to follow counsel in their able discussion of the question raised by appellant, that the contract is violative of the common-law rule against perpetuities.

The judgment is reversed.

COLEMAN, J., concurring:

I concur in the order of reversal, but upon a somewhat different theory from that of my esteemed associate.

Brushing aside superfluities, the facts are that the plaintiff obtained from defendant an option upon a group of mining claims, with the privilege of purchasing them for $75,000, to be paid out of the net proceeds of the ore shipped from the development. At the same time, he obtained an agreement, reciting the execution of the option, with the understanding that the plaintiff was "going to endeavor to sell the said mining claims to other parties, for the purpose of making a commission on the transaction," wherein it was agreed that, in the event of plaintiff's effecting such a sale to "other parties" for the sum of $75,000, he should receive a commission of 12 per cent. The option agreement was later modified so as to have it run to the plaintiff and J. T. Goodin, with the further provision that the optionees should do 1,200 shifts of work upon the property per annum, and that such work should begin not later than September 10, 1917. On September 7, 1917, the defendant notified Goodwin and associates that he had elected to declare the option forfeited, and that, if they entered upon the property to do any work thereon, they would be forcibly ejected. The foregoing are undisputed facts.

The complaint alleges:

"Fifth—That plaintiff, acting under and in pursuance to said agreements hereinbefore mentioned, performed services in obtaining and did obtain purchasers of the rights conferred and granted by the said agreement, hereinbefore referred to and marked Exhibit A, and by the agreement hereinafter referred to and marked Exhibit C, and of the mining claims, leases and options therein mentioned and described and thereby agreed to be sold and assigned to plaintiff. And the purchasers so obtained were obtained by plaintiff prior to the breach and cancelation of said contracts by the defendant, as hereinafter alleged, and before the time provided in said contract had expired; and said purchasers so obtained were ready, willing and able to take and assume said contracts and all rights thereunder on the terms therein provided."

Paragraph 12 of the complaint alleges that, because of the said cancelation and rescission, the plaintiff had been damaged in the sum of $9,000. An answer was filed denying the material allegations of the complaint, except as to the undisputed facts stated.

After the trial the court made findings of fact favorable to the plaintiff, and entered judgment accordingly for $9,000. This appeal is from the judgment alone; hence we have not the evidence before us.

In reply to the charge made by counsel for appellant, in their opening brief, that the record as made by the plaintiff is uncertain and confusing, and that it is impossible to ascertain therefrom the plaintiff's theory of the case, counsel for respondent say:

"Respondent's position is that he, having fully complied with all the terms of the agreement and being prevented by appellant from going ahead and consummating the deal, that he became immediately entitled to the commission which would eventually have been paid to him, and which he had already earned under the terms of the contract."

From the view-point thus stated, the findings will be considered and the law applied. The court found the

undisputed facts to be as above stated; that the option was given for a valuable consideration; that the plaintiff had spent time and money in endeavoring to find a purchaser, and that, after several fruitless attempts, he organized what was known as the "Second Syndicate," composed of himself and four others. The court further found:

"That the plaintiff, acting under and in pursuance of the written agreements hereinbefore designated as Exhibit A, Exhibit B, and Exhibit C, performed services in obtaining, and did obtain, purchasers of the property, premises, rights, and privileges conferred and granted to him by said written agreements and of the mining claims, leases, and options therein mentioned and described and thereby agreed to be sold and assigned to the plaintiff prior to September 1, 1917. That the purchasers so obtained were men forming the association hereinbefore designated as the "Second Syndicate," and they were ready, willing, and able to take and assume said written agreements and all rights thereunder on the terms therein provided, and they were ready, willing and able to purchase and take over the property and premises of the defendant which he had agreed to sell and convey to the plaintiff, and upon the terms and conditions provided in the written agreement made by the plaintiff and the defendant."

Also:

"That the plaintiff expended time, effort, and money and paid money to the defendant in good faith in the course of his acts performed under and by virtue of the written agreements made and entered into by and between him and the defendant, and in the course of his attempts to fulfil said contract in the respects by him to be fulfilled."

That said syndicate "arranged to provide money to take over the premises * * * and to work and handle the same, to the extent of $4,500. That they likewise arranged for an additional credit in the sum of $4,000."

The court also found that the defendant declared the option forfeited, and notified Goodin and others that he would forcibly eject them if they sought to enter upon the property.

Paragraph 5 of the complaint amounts to nothing more than an allegation that the plaintiff had found persons willing, ready, and able to assume his rights under the option agreement, and the finding of the court is in accord with this interpretation of the allegation mentioned. Assuming that the option was given for a valuable consideration, or because of work done or money expended in pursuance of its terms, either by the plaintiff or by the "Second Syndicate," as found by the court, the cancelation thereof by the defendant, if an infringement upon the rights of the members of said syndicate, would afford grounds for a cause of action by the "Second Syndicate." Respondent relies upon the rule stated in 4 R. C. L. 315, as follows:

"While, as above shown, according to the great weight of authority the mere procuring of one to take an option does not entitle the broker to commission if the optionee elects not to exercise the same, yet it is apparently well settled that the broker is entitled to his commission if the option is actually exercised or the optionee is willing. to exercise it, but is prevented from doing so by the refusal of the owner to comply with his part of the agreement."

8. It is not understood that counsel for appellant disputes the correctness of the rule stated. But it is, no doubt, well established that options given for a valuable consideration are irrevocable. Such a contract is capable of specific performance.

"The privilege given in options to the holder either to enforce or cancel the contract does not prevent him from obtaining the specific performance of the contract, provided the option itself is founded on sufficient valuable consideration." 25 R. C. L. 235, 236.

In Schroeder v. Gemeinder, 10 Nev. 364, it is held:

"A court of equity, in actions for the specific performance of optional contracts and covenants to lease or convey lands, will enforce the covenant, although the remedy is not mutual, provided it is shown to have been made upon a fair consideration, and where it forms part of a contract, lease, or agreement that may be the true consideration for it."

This, it is believed, is sound doctrine. If an optional contract will support an action for specific performance, the wrongful forfeiture of the contract by the optionor should be a ground for a cause of action. In House v. Jackson, 24 Or. 89, 32 Pac. 1027, it was held that an optionee, for a valuable consideration, was actually seized of the estate, and, as a consequence, might sell the same before a conveyance had been executed to him, notwithstanding an election to complete the purchase rested entirely with the purchaser. However, in determining this case, it is not necessary for us to go the length to which the Oregon court seems to have gone.

9. If the rule stated in Schroeder v. Gemeinder, supra, is sound—and it seems to be—it would naturally follow as an inevitable consequence that if by canceling the option in the instant case the "Second Syndicate" was prevented from working the property and paying therefor, the plaintiff was, through the wrongful act of the defendant, prevented from receiving his commission; unless it be that the plaintiff, being a member of the "Second Syndicate," could not recover a commission, compensation for his services or damages, as the case might be, upon any theory. And we think such is the rule. In Hammond v. Bookwalter, 12 Ind. App. 177, 39 N. E. 872, quoting from the syllabus, it is said:

"If one employ a firm of real-estate brokers to procure a purchaser for certain real estate, and the brokers procure a sale thereof to a syndicate of which one of the brokers is a member, the brokers cannot collect commission for such a sale unless it is made to appear that the principal, knowing the interest of one of

Coleman, J., concurring

such brokers (his agent) in the syndicate purchasing the property, specially undertook and agreed to compensate them for making the sale."

Sustaining this rule are the following cases: Stewart v. Mather, 32 Wis. 344; Sterling E. & C. Co. v. Miller, 164 Wis. 196, 159 N. W. 732; Finnerty v. Fritz, 5 Colo. 174; Christianson v. Mille Lacs L. & L. Co., 113 Minn. 120, 129 N. W. 150, 31 L. R. A. (N. S.) 536, Ann. Cas. 1912A, 200.

The commission agreement, providing as it does that it is given for the purpose of effecting a sale to "other parties," makes the rule of exceptional force in the instant case.

The plaintiff being a member of the "Second Syndicate," the judgment should be reversed.

DUCKER, J., not participating.