. No. 10,389.

JENKINS *v.* MABEE.

Decided May 7, 1923.   Rehearing denied June 4, 1923.

Action to recover a commission for the sale of mining property.   Judgment for plaintiff.

*Reversed.*

1.  CONTRACT—*Agency.*  Contract considered and held to show the employment of plaintiff as an agent.

2.  PRINCIPAL AND AGENT—*Duty of Agent.*  One holding a bond and lease on mining property, was authorized by contract to sell the property.  He assigned his lease, the assignee subsequently purchasing the property.  Held, that under the circumstances the assignment was not a breach of the assignor's duty as agent.

3.  BROKERS—*Real Estate—Commission.*  Real estate brokers may, under some circumstances, retain a part of the purchase price of property sold, in addition to a commission, as compensation for their services in making the sale.

4.      *Real Estate—Commission from both Parties.*  Where a broker is employed by each of the parties to a transaction, without notice to either, he can recover no commission.

5.      *Middleman.*  A middleman neither negotiates for, nor is employed to negotiate for either side.

6.  INSTRUCTIONS—*Erroneous.*  In an action by a broker, for a commission for the sale of property under a contract which was clearly an employment to work for the sale, not merely to bring the parties together, an instruction of the court that the agent was a middleman and consequently had a right to take commissions from both parties, was erroneous.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. E. W. HURLBUT, for plaintiff in error.

Messrs. DINES, DINES & HOLME, Mr. ROBERT E. MORE, Mr. PAUL P. PROSSER, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

MABEE had a verdict and judgment against Jenkins in a suit to recover a balance of $6,000 due on a commission of $10,000, on which $4,000 had been paid and credited, on a sale of mining property.   Jenkins brings error.

June 15, 1908, Jenkins gave Mabee a lease and bond on the property, with a three years option in usual form to purchase for $50,000, and June 25th gave him a written contract whereby, "In consideration of" Mabee's "disposing of a certain lease and bond upon the Eureka, etc., claims, dated June 15, 1908, for the sum of Fifty thousand dollars" he (Jenkins) agreed to pay him "the sum of ten thousand dollars as commission on such sale   *   *   *".

June 27th Mabee assigned all his right, title and interest in the lease and bond to one Caldwell and received $1,000 from him.   Caldwell assigned it to a corporation, which, after an extension, received a deed of the property in question from Jenkins.

Mabee testified that he sold the lease and bond to Caldwell for the $1,000; Caldwell testified that he employed Mabee "to get me a property", and in consideration was to pay him $1,000, and employ him as superintendent of the mine; that Mabee got the lease and bond pursuant to that employment and was paid the $1,000, and was employed for several years accordingly.   Jenkins testified that he did not know of the sale of the lease to Caldwell or the payment of the $1,000 to Mabee till 1919, after he had made the last payment to Mabee of the $4,000.

Plaintiff in error claims that no agency was shown but we think the contract of June 25th shows, without question, an employment as agent.

The court refused to instruct that if the plaintiff assigned his right, title, and interest in the lease to Caldwell for a thousand dollars and a promise of employment, the verdict should be for the defendant.   This refusal is urged as ground for reversal.   The question is twofold:   First,

whether the assignment was a violation of plaintiff's duty as Jenkins' agent, and, secondly, whether the receipt and retention of the thousand dollars was such.

On the first point it is urged that the assignment put it out of plaintiff's power and out of Jenkins' power to obtain any other purchaser, and therefore, was a violation of the agent's duty. The lease, however, and the employment contract must be construed together, and when so construed it must be said, under the circumstances, that the employment was to dispose of the *property* not merely the lease and the bond, because Jenkins could not have been undertaking to pay for the sale of the mere lease in which he had no interest. The lease then must be considered as a means to effect a sale of the property and to be used as such, otherwise the two instruments would be inconsistent. Mabee had a right, therefore, to assign it as a step to effect a sale and, indeed it accomplished that end. It follows that the mere assignment was not a breach of plaintiff's duty as agent.

As to plaintiff's right to retain the $1,000, construing the lease and contract together, and even giving, as we must, preference to the later of the two where they are inconsistent, we cannot say that Mabee had not still the right to the excess of the price over $50,000. His employment as agent was not necessarily inconsistent with that right especially since there was an oral understanding concerning a commission when the earlier instrument was given. Brokers not infrequently are given, in addition to a commission, all they can obtain above some fixed price. It follows that the receipt and retention of the $1,000, if it was the price of the lease and bond or a part of the price of the property and not for services rendered Caldwell, was not a breach of duty. We think this instruction was rightly refused.

The court instructed the jury peremptorily that Mabee was a middleman and consequently had a right to take commissions from both seller and purchaser. This instruction was erroneous. The contract is clearly an em-

ployment to work for the sale, not merely to bring the parties together. The fact that the price and terms of sale were fixed does not of itself make the broker a middleman. It might still be, and, indeed, in real estate transactions usually is, the broker's duty to try and effect the sale. Under such a contract the agent could not be a middleman (*Finnerty, et al. v. Fritz,* 5 Colo. 174, 176), and if he was employed by each without notice to the other, he could recover a commission from neither. The testimony of Caldwell, therefore, that he employed and paid Mabee to get the property should have gone to the jury with proper instructions as to its effect if they believed it.

But even without the contract of June 25, the instruction would have been wrong, because, if Caldwell's testimony was true, Mabee was not a middleman. A middleman neither negotiates for nor is employed to negotiate by either side. *Finnerty, et al. v. Fritz, supra.* Caldwell's testimony was that Mabee was to negotiate for him, therefore the question whether plaintiff was a middleman but for the contract of June 25th, would have been for the jury.

Judgment reversed and cause remanded for new trial.