**George W. ABBOTT, Plaintiff,**

**v.**

**UNITED VENTURE CAPITAL, INC., a Nevada corporation, Inn Management, Inc., a Nevada corporation, Seth L. Atwood, Robert J. Angres, and Mark H. Gunderson, Defendants.**

**Nos. CV–R–86–593–ECR, CV–N–87–106–ECR.**

United States District Court, D. Nevada.

Nov. 9, 1988.

Thomas M. Kelly, Minden, Nev., for plaintiff.

George W. Abbott, Minden, Nev., pro se.

Mark H. Gunderson, Reno, Nev., Kim Hagerty, Incline Village, Nev., and Pinkerton & Polaha, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

The matters before the Court involve two complaints brought by plaintiff Abbott against defendants United Venture Capital, Inc. ("UVC"), Inn Management, Inc. ("Inn"), Seth Atwood ("Atwood"), Robert Angres ("Angres"), and Mark Gunderson ("Gunderson"). The first complaint, CV–R–86–593–ECR, accuses the defendants of defamation. The second complaint, CV–N–87–106–ECR, alleges that the same defendants are liable to Abbott for malicious prosecution, abuse of process, intentional infliction of emotional distress, fraud, and related torts. Both of these complaints stem from the defendants' actions in filing a separate and distinct lawsuit against Abbott in May of 1985.

This lawsuit against Abbott also named many other individuals and corporations as defendants. It accused Abbott, who was and is an attorney, and the others of, *inter alia*, fraud, conspiracy, and numerous violations of both federal securities laws and federal racketeering statutes. *See* First Amended Complaint filed August 2, 1988, Exhibit 1. The origin of this lawsuit was a dispute between UVC and one of Abbott's clients, regarding the client's procurement and use of several millions of dollars of loans from UVC.

Soon after filing this complaint in federal court in the Northern Division of the District of Nevada, Gunderson, acting as an attorney on behalf of UVC, Inn, Atwood, and Angres, sent a letter to the *Nevada Appeal*, a local newspaper. In this letter, Gunderson announced that UVC had initiated a lawsuit against several persons and entities, including Abbott. The letter also summarized the factual basis underlying UVC's lawsuit and contained a copy of the complaint that UVC had filed. *See* Defendant's Motion to Dismiss filed May 5, 1987, Exhibit B.

On March 5, 1986, UVC voluntarily dismissed Abbott from its lawsuit pursuant to Fed.R.Civ.P. 41(a). Approximately two months later, on May 21, UVC's entire lawsuit was dismissed with prejudice.

Abbott's defamation complaint currently before this Court alleges that the defendants libeled him by sending the letter and a copy of the complaint to the *Nevada Appeal* and other print, radio, and television media in Nevada. First Amended Complaint filed August 2, 1988, at 4–7. As a result of the defendants' publication of these materials to the media, Abbott contends that approximately 300,000 people were informed of the charges against him. *Id.* at 5. Abbott alleges that the defendants publication of these materials to the media, not the media's republication of the charges to the public, constituted libel *per se*. Abbott asserts federal diversity jurisdiction under 28 U.S.C. § 1332(a)(1) on the ground that when he commenced this action, in December of 1986, he was a citizen of California and all the defendants were Nevada corporations or citizens. *Id.* at 1–2. Abbott's second complaint, alleging malicious prosecution, intentional infliction

of emotional distress, and related torts, which was filed in March of 1987, also asserts diversity jurisdiction.

The Court referred all pretrial proceedings in both of these cases to the United States Magistrate. Minute Order of June 29, 1987. Pursuant to this Order, the Magistrate has recommended the denial of two of defendants' motions that seek to dismiss Abbott's complaint. *See* Order entered August 18, 1988; Report and Recommendation entered April 13, 1988. One of these motions argues that both of Abbott's complaints should be dismissed because Abbott's citizenship is not diverse from the defendants' citizenship.[1] The second motion attempts only to dismiss Abbott's defamation complaint on the grounds that the publications at issue either were not libelous *per se* or were privileged communications. Defendants have filed their objections to the Magistrate's recommendations of denial and these motions, therefore, are now ripe for consideration by this Court.[2] Since both of defendants' motions are dispositive in the sense that they seek to dismiss Abbott's complaints, this Court shall make a de novo determination of the merits of defendants' motions.[3] *See* 28 U.S.C. § 636(b)(1); Local Rules of the District of Nevada, Rule 510–2.

## I. JURISDICTIONAL ISSUE

Defendants first motion argues that this Court lacks subject matter jurisdiction over Abbott's complaints. Since the torts alleged by Abbott are not federal causes of action, Abbott's only basis for asserting federal jurisdiction is the diversity statute, 28 U.S.C. § 1332(a)(1). Abbott alleges that all of the defendants are Nevada citizens and that he is a California citizen. While the defendants concede that they are Nevada citizens, they maintain that when Abbott filed his complaints, between December, 1986, and March, 1987, he was also a Nevada citizen.

The Magistrate held an evidentiary hearing on this issue on August 9, 1988. On the basis of the testimony presented at this hearing, the Magistrate concluded that at the time Abbott filed his original complaints, he was a California citizen. The Magistrate explicitly found that Abbott had resided in Woodfords, California, during all of 1986 and through April of 1987. In May of 1987, the Internal Revenue Service seized and sold Abbott's Woodfords home on grounds which Abbott is currently challenging in court. Two months later, a fire destroyed this home. The Magistrate found that prior to the fire, Abbott had an intent to remain domiciled at his California residence indefinitely. Order entered August 18, 1988, at 2–3.

The defendants argue that the facts adduced at the evidentiary hearing do not support the Magistrate's findings. Defendants concede that from 1979 until mid–1987, Abbott's "primary residence" was in Woodfords, California, approximately fifteen miles from the Nevada state line. Defendants contend, however, that despite this primary residence in California, Abbott had a "more substantial relationship" with

---

**1.** Citizenship for diversity purposes is determined at the time the lawsuit is filed. *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir.1986). Nevertheless, while Abbott's second complaint was not filed until four months after his defamation complaint, this time lapse has no impact on defendants' jurisdictional challenges. The Magistrate held an evidentiary hearing regarding jurisdiction and the testimony at this hearing clearly demonstrated that the facts relevant to determining Abbott's citizenship remained unchanged from December of 1986 to March of 1987. This Court, therefore, shall address the defendants' jurisdictional challenges to both complaints through this single order.

**2.** The ripeness of these motions was at issue because Abbott filed an amended defamation

complaint subsequent to the filing of these motions to dismiss. The amended complaint, however, served merely to remove Doe defendants and was substantively identical to Abbott's original defamation complaint. Furthermore, after the filing of this amended complaint, the defendants explicitly repled all of their former motions. Notice of Repleading filed August 11, 1988. The Magistrate also explicitly found that her prior recommendations were unaffected substantively by Abbott's amendment of his complaint. Order entered August 18, 1988.

**3.** While the Magistrate entered an order denying defendants' motion to dismiss on jurisdictional grounds, we shall treat that order as a report and recommendation subject to de novo review.

the State of Nevada. At the evidentiary hearing, Abbott testified that between 1979 and 1987, he was licensed to practice law in Nevada and not in California. Abbott added that his law practice had been based in Nevada since 1961. He also testified that he had long maintained a small apartment in Minden, Nevada, in the same building as his law office, at which he kept some business suits and occasionally slept overnight. In addition, he registered his cars in Nevada and possessed a Nevada Driver's License. Furthermore, Abbott did his banking in Nevada, listed a Nevada Post Office Box as his mailing address on his federal income tax returns, and never filed a California state income tax return. Finally, while Abbott stated that he had registered to vote in California, he admitted that he had never actually voted in that state. He also declared that he had voted in Nevada in the 1980 presidential election.

■ For the purposes of diversity jurisdiction, a United States citizen is considered a citizen of the state in which he is domiciled. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986); *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir.1983); *Safeco Ins. Co. v. Mirczak*, 662 F.Supp. 1155, 1157 (D.Nev.1987). A person is "domiciled" in a location when he "has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Lew*, 797 F.2d at 749–50 (quoting *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir.1940)); *see also Safeco Ins. Co.*, 662 F.Supp. at 1157. In determining diversity, the relevant domicile is the one at the time of the lawsuit's filing. *Lew*, 797 F.2d at 750; *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir.1980). Furthermore, the burden of proof in establishing diversity of citizenships is on the party asserting diversity as a basis for federal jurisdiction. *Lew*, 797 F.2d at 749, *Safeco Ins. Co.*, 662 F.Supp. at 1156.

In light of these principles, Abbott has the burden of proving that when he originally filed his complaints, his state of domicile was California. The Magistrate concluded that Abbott had met this burden by credibly testifying that for almost eight years prior to filing his complaint, he had lived with his wife and children at a large home in Woodfords, California. The defendants argue, however, that although Abbott did reside in California, he did not intend to remain there indefinitely. In support of their argument, defendants discount Abbott's testimony regarding his subjective intent and stress the objective factors that indicate Abbott's lack of meaningful ties to California. The defendants emphasize that in analyzing a resident's "intent to remain," many courts have considered such factors as the resident's place of employment, driver's license, automobile registration, bank accounts, tax payments, and voting practices. *See, e.g., Lew*, 797 F.2d at 750, 752; *Noreiga v. Lever Bros. Co.*, 671 F.Supp. 991, 993–94 (S.D.N.Y. 1987); *Knapp v. State Farm Ins.*, 584 F.Supp. 905, 907 (E.D.La.1984).

The Court notes, however, that cases which examine these "objective indicia" usually involve an individual who has recently relocated from one state to another without establishing ties to their new state or cutting their previous ties. *See, e.g., Noreiga*, 671 F.Supp. at 994–95; *Willis v. Westin Hotel Co.*, 651 F.Supp. 598, 603–04 (S.D.N.Y.1986); *Deckers v. Kenneth W. Rose, Inc.*, 592 F.Supp. 25, 27–28 (M.D.Fla. 1984); *Avins v. Hannum*, 497 F.Supp. 930, 936–38 (E.D.Pa.1980). In contrast, the case at bar involves an individual who resided in one state for a long time period, but who did not acquire other ties to his state of residence because he worked in another state.

■ In the context of the dispute at bar, therefore, the factors emphasized by the defendants do not controvert Abbott's expressed intent to remain at his California home indefinitely. For almost eight years prior to the filing of his complaint in this case, Abbott lived in California and commuted daily to Nevada for work. Since Abbott practiced law in Nevada, he acted reasonably in obtaining a Nevada driver's license, banking in Nevada, and maintaining business suits and sleeping quarters in Nevada. While Abbott's failures to register his car in California and file California

state income tax returns may or may not have violated California law, these failures do not indicate that Abbott actually intended to return to Nevada. These "objective indicia" of residency simply are not very relevant to determining domicile in a situation like Abbott's, where the party at issue resides in one state but works in another. *See Faktor v. Philadelphia Mun. Workers Dist. Council 33 Health and Welfare Fund,* 422 F.Supp. 557, 559–60 (E.D.Pa. 1976) (finding an individual who resides in New Jersey to be a New Jersey citizen for diversity purposes even though the individual worked in Pennsylvania, occasionally stayed overnight in Pennsylvania, maintained a Pennsylvania driver's license and checking account, and filed Pennsylvania state income tax returns).

This Court is convinced that between December, 1986, and March, 1987, Abbott resided in California and had the intent to remain there indefinitely. Our conclusion is based primarily on the fact that Abbott and his family had lived at the same residence in Woodfords, California, for almost eight years and that they considered this residence to be their family home. Furthermore, Abbott testified at the evidentiary hearing that prior to the fire that destroyed his Woodfords home in July of 1987, he had no intention of moving from California. The Magistrate found his testimony to be credible and we have no reason to doubt her determination. Consequently, this Court finds that at the time he filed his complaints, Abbott was domiciled in California, which makes him a California citizen for the purposes of federal diversity jurisdiction. Since all the defendants in this matter are Nevada corporations or citizens, we hold that federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1).

## II. LIBEL PER SE

In their second motion, defendants attempt to dismiss Abbott's defamation complaint by arguing that their letter and complaint were not libelous *per se*. Abbott has not alleged special damage arising from defendants' alleged defamation of him and, under Nevada law,[4] a cause of action for libel will not lie absent such an allegation unless the statements at issue are libelous *per se*. *Branda v. Sanford,* 97 Nev. 643, 637 P.2d 1223, 1225 (1981); *Talbot v. Mack,* 41 Nev. 245, 169 P. 25, 34 (1917). Libelous *per se* statements do not require an allegation of special damages because such statements are, by definition, "such that the court can legally presume that the party has been injured in his reputation or business or in his social relations or has been subjected to public scandal, scorn, or ridicule." *Talbot,* 169 P. at 31. Thus, a statement is actionable *per se* when its "injurious character is a fact of common notoriety and generally so understood where the utterance is published." *Id.* at 32. For example, in actions for slander, spoken statements have been held to be defamatory *per se* where they impute that (1) plaintiff has committed a crime; (2) plaintiff is unfit to perform his business or employment; (3) plaintiff has contracted a loathsome disease; or (4) plaintiff is unchaste. *See Branda,* 637 P.2d at 1225.

The Magistrate correctly concluded that both the letter and the complaint in the case at bar constitute libel *per se*. In the first place, both the letter and the complaint charge Abbott with "multiple violations of the Federal Securities Law, fraud and conspiracy." Defendants' Motion to Dismiss filed May 5, 1987, Exhibit B, at 1. Although these charges were made in the context of a civil lawsuit, they are tantamount to accusing Abbott of numerous criminal acts. Furthermore, these accusations were clearly injurious to Abbott's ability to conduct business as an attorney. As the Magistrate noted, "allegations of fraud call into question the honesty and integrity of their intended subject.... and thus harm his professional and business reputation in the community." Magistrate's Report and Recommendation entered April 13, 1988, at 7.

---

**4.** Since diversity jurisdiction applies and the complained of publications occurred in Nevada, Nevada law governs the substantive merits of this case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Defendants' contention that their letter and complaint did not impugn Abbott's integrity or fitness as an attorney is wholly without merit. They argue that only three causes of action in their complaint refer specifically to Abbott by name and that these allegations do not malign his integrity. This Court finds, however, that the three allegations which do specifically name Abbott are indeed libelous *per se.* These allegations accuse Abbott of (1) acting "fraudulently and oppressively" to disrupt a contractual relationship; (2) engaging in conduct designed "to harass, importune, threaten, and annoy;" and (3) publishing false and malicious written and oral statements. Defendants' Motion to Dismiss filed May 5, 1987, Exhibit A at 31–34. Moreover, defendants' implied assertion that Abbott was not defamed by their allegations that did not specifically name him is divorced from reality. In their lawsuit, the defendants sued Abbott on all twenty-one causes of action, alleging that "at all material times [Abbott was] responsible in some manner for the acts and conduct alleged." *Id.* in Exhibit A, at 6. The letter sent by the defendants to the *Nevada Appeal* also treats Abbott as being accused of all the wrongdoing alleged in the complaint. Defendants' Motion to Dismiss filed May 5, 1987, Exhibit B, at 1.

Hence, this Court finds that, as a matter of law, both the letter and the complaint published by the defendants to the *Nevada Appeal* were libelous *per se.* Consequently, Abbott's defamation complaint survives defendants' motion to dismiss for failure to allege special damages.

### III. PRIVILEGE

Finally, defendants assert that an array of absolute and qualified privileges mandate the dismissal of Abbott's defamation suit. The Court has reviewed these asserted privileges and finds that none of them are applicable to defendants' republication of their complaint to the media. Indeed, the Court finds that the Magistrate's Report and Recommendation entered April 13, 1988, accurately sets forth the reasons why defendants' asserted privileges are inapplicable. The Court also finds that Defen-

dants' Objections to the Magistrate's Report and Recommendation are without merit and add nothing to defendants' initial motion to dismiss. Hence, the Court hereby adopts and incorporates the Magistrate's reasoning regarding her finding that the defendants' conduct was not privileged. *See* Magistrate's Report and Recommendation entered April 13, 1988, at 9–15.

### IV. JUDGMENT AND ORDER

IT IS, THEREFORE, HEREBY ORDERED that Defendants' Motion to Dismiss (document #13 in CV–R–86–593–ECR) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Abbott's complaints for lack of diversity jurisdiction (document #52 in CV–R–86–593–ECR and document #41 in CV–N–87–106–ECR) is DENIED. Accordingly, this Court adopts the Magistrate's Order Finding Diversity Jurisdiction entered August 18, 1988 (document ' 51 in CV–R–86–593–ECR).