C. L. WHITELOCK, Plaintiff-Appellee,

v.

Delbert LEATHERMAN et al.,
Defendants-Appellants.

No. 71–1474.

United States Court of Appeals,
Tenth Circuit.

May 9, 1972.

**508**

Kenneth E. Barnhill, Jr., Denver, Colo., for plaintiff-appellee.

John D. Ward, Denver, Colo. (Thomas R. Young, Denver, Colo., with him on the brief), for defendants-appellants.

Before SETH and McWILLIAMS, Circuit Judges, and CHRISTENSEN, Senior District Judge.*

* Sitting by designation pursuant to 28 U.S.C. § 294(c) (1970).

1. Appellee in addition to affirmance seeks in this court damages, attorney's fees, and double costs, pursuant to Rule 38, Fed.R.App.P. From what is noted hereinafter the basis of our conclusion that there are awardable here only the costs ordinarily taxed on appeal in favor of a prevailing party will become more apparent. While the presentation of certain contentions might be thought frivolous, the basic objection to the unconditional order below cannot be so considered.

CHRISTENSEN, Senior District Judge.

Upon findings of fact which we have determined to be generally supported by the evidence, the court below granted specific performance of an agreement of the defendants-appellants Leatherman and Cope to assign state mining leases to the plaintiff-appellee Whitelock. Finding little substance in the grounds for appeal expressly explored in the briefs and oral arguments here, but having considered also certain entwined problems which are not without difficulty and which refute appellee's contention that the appeal is frivolous,[1] we conditionally affirm.

The points specifically urged by appellants in support of their appeal are: (1) that certain findings and conclusions of the trial court are not supported by the record; (2) that the trial court erred in restricting evidence concerning the circumstances of the execution of a certain "Mining Lease and Option to Purchase"; (3) that this lease-option was voidable because it was not executed by the plaintiff lessee; and (4) that it was voidable because it was a mere option.

The evidence discloses that appellants-defendants Leatherman and Cope on or about July 9, 1969, acquired from the Colorado Board of Land Commissioners Colorado Fluorspar Mining Lease #2134/16–F. According to plaintiff's testimony, Leatherman approached the plaintiff to see if he wanted "to lease their property". The acreage of the existing lease wasn't deemed large enough by plaintiff and he asked Leatherman to go to Denver to "pick up . . . five or six hundred acres more to tie this all in." Plaintiff told him to take the additional lease in Leather-

man's and Cope's names "as long as I am dealing with you on this 158 acres." Plaintiff gave Leatherman $400 at that time, $310 being the cost of the lease and the balance to be used as expenses. Upon the accomplishment of this mission Leatherman and Cope signed a form headed "Mining Lease and Option", completed by plaintiff, which plaintiff testified he had "always used" but which apparently was not tailored to the particular transaction. Leatherman stated when the form was handed to him, "That's fine, and I know the State Land Board, I'll take care of everything." Plaintiff paid Leatherman $1000 and agreed to pay him also "a two and a half per cent royalty."[2] Plaintiff through "oversight" didn't sign the lease-option delivered by Leatherman but coupled explanation of this oversight to the statement, "but Mr. Leatherman was going to get the other from the state anyway." The lease-option nonetheless was recorded by plaintiff with the county recorder.

The completed lease-option form as so signed and recorded recited that it was "entered into the 30th day of July", the year being omitted, between Delbert Leatherman and Wiley A. Cope, thereinafter referred to as Lessor, and C. L. Whitelock, thereinafter referred to as Lessee. It provided that the Lessor, in consideration of the payment of rents and royalties and the performances set forth, granted and leased to the Lessee the mining properties covered by Fluorspar Mining Lease #2134/16–F, pro-

cured independently by Leatherman and Cope, and Fluorspar Mining Lease #2136/16–F, obtained by them pursuant to Leatherman's oral agreement with plaintiff; that "the term of this lease shall be for a period of fifteen years with the lessee having the option to buy or to renew for an additional fifteen years", the option price being stated as $35,000; that all royalties were to apply to the purchase price of the property and that "as consideration for this lease", lessee agreed to pay the lessor $1,000 cash and 2½% overriding royalty. There were other provisions in the instrument typical of mining leases, including a covenant that the lessee would operate the mine in full compliance with all state mining laws, but nothing further tending to clarify the problems before us.

The evidence further established that plaintiff paid accruing rentals due to the State Board of Land Commissioners under the primary leases following the delivery of the lease-option to him, and that the Board's regulations regarding the assignment of leases did not recognize a sublease as such but required an assignment to be executed on an approved form by the original lessee in favor of any sublessee, a new lease then to be issued to the latter. Other arrangements between the sublessor and sublessee were to be left to their separate agreement. The primary leases covered by the sublease-option executed by Leatherman and Cope contained consistent express provisions.[3]

---

2. There was evidence that $300 was later advanced by plaintiff to Leatherman as against possible future royalties.

3. "10. *Assignment*—The Lessee, with the written consent of the Lessor, shall have the right to assign this lease as to the entire leasehold interest of such Lessee in all or part of the lands covered hereby, not less, however, than tracts of approximately forty (40) acres or Governmental lot corresponding to a quarter-quarter section for any partial assignment, and for approval of such assignment the Lessor may make a charge of Ten Dollars ($10.00) for any one assign-

ment. No assignment of undivided interests or retention or reservation of overriding royalties will be recognized or approved by Lessor; and the effect, if any, of any such assignments or reservations will be strictly and only as between the parties thereto, and outside the terms of this lease, and no dispute between parties to any such assignment or reservation shall operate to relieve the Lessee from performance of any terms or conditions hereof or to postpone the time therefor. Lessor will and shall at all times be entitled to look solely to the Lessee or his assignee shown on its books as being the sole owner hereof, and for the sending

Plaintiff went into possession of the property, had it inspected by geologists and engineers, and did substantial work on it with heavy equipment before his possession was interrupted by Tripp, also defendant-appellant herein. Immediately preceding this occurrence Leatherman had told plaintiff that he had been contacted about the property by Tripp and that he had been offered $500 cash and one quarter percent royalty for each (presumably for plaintiff, Leatherman and Cope). Plaintiff told Leatherman he was not interested. It was learned later that Tripp's entry upon the property was the result of an understanding between him and the other defendants-appellants.

Reciting without supporting pleadings or findings that it had "jurisdiction over . . . the subject matter of this action", the trial court found the facts consistently with the evidence recited above, and particularly found that in reliance upon the lease and option plaintiff commenced work on the described lands with the full knowledge of the defendants, and that "by express provision and by every reasonable implication arising from the provisions of said Mining Lease and Option to Purchase, the defendants Leatherman and Cope agreed to perform any and all acts reasonably necessary to perfect plaintiff's title to the leasehold estates reflected in Colorado Fluorspar Mining Leases #2134/16–F and #2136/16–F"; that the appellants Leatherman and Cope refused to execute forms required by the State Board of Land Commissioners as necessary to accomplish the as-

signment of the state mining leases in accordance with its regulations and that on or about March 23, 1971, the defendant W. D. Tripp without authorization from the plaintiff entered and did work upon the lands described in said leases at a time when he had actual and constructive notice of plaintiff's leasehold interest in said lands.[4]

From these findings the trial court concluded that plaintiff's failure to sign the "Mining Lease and Option to Purchase" did not affect its validity and binding effect, that the absence of approval of any assignment of the leases by the Board of Land Commissioners had no effect upon the relationship between the parties, that plaintiff was entitled to specific performance of "defendants'[5] agreement to convey and assign said leases to him", and that the defendant Tripp had no right to enter upon the premises described in the leases. Accordingly, appellants Leatherman and Cope were ordered within ten days to execute and deliver to counsel for plaintiff forms required by the Colorado State Board of Land Commissioners to effect an assignment to plaintiff of the primary leases in question, in the absence of which it was provided that the court would appoint some person to execute these forms for and on behalf of the defendants. It was from this order, treated as the final judgment in the cause, that this appeal was taken.

■ As to appellants' first point, an examination of the record reveals that all of the essential findings of fact of which complaint is made[6] are supported by substantial evidence.

---

of all notices required by this lease and for the performance of all terms and conditions hereof. If an assignment in whole or in part of this lease is approved, a new lease shall be issued to the assignee covering the lands assigned, for the balance of the life of the lease, on the mining lease form in use at the time of the assignment, and limited as to term as said lease is limited, and the assignor shall be released and discharged from all further obligations, and shall be held to have released all rights and benefits thereafter accruing with respect to the assigned

land, as if the same had never been a part of the subject matter of this lease."

4. The court further found that no fraudulent misrepresentations were made by plaintiff to induce his agreement with the defendants. This finding is not questioned in this appeal.

5. The authority of Leatherman to act for Cope has not been questioned in these proceedings.

6. Number 6 to the effect that plaintiff paid the defendants Leatherman and Cope a

■ Appellants point out that the trial court consented to the amendment of the pre-trial order to permit argument directed to the question "whether or not a lease and option to purchase which does not provide for a specific time in which to commence work was voidable" and argues that the trial court failed to make a finding of fact or conclusion of law on this issue. We think this issue was one of law determinable from the face of the written document. In effect the trial court did conclude that the written "Lease and Option to Purchase" was not voidable, supported as it was by independent consideration as well as the agreement to pay an overriding royalty.[7]

■ Appellants' second contention is that they were unduly restricted in the development of the circumstances of the execution of the written lease-option. This is not substantiated by the record. It is true that the court itself raised the question of the parol evidence rule in connection with the cross-examination of the plaintiff by appellants' counsel and that thereafter the circumstances leading up to the form and execution of the lease-option were not fully explored. However, this was not the result of any preclusive ruling by the trial court but at appellants' own election, tactical or otherwise.[8]

■ Defendants concede in connection with their third point that the doc-

---

fair and adequate consideration for the purchase and assignment of said leases; number 8 to the effect that the failure of the plaintiff to sign was inadvertent and did not affect the validity of the Mining Lease and Option to Purchase; number 9, that plaintiff commenced work on the lands covered by said Mining Lease and Option to Purchase, such work having been commenced with the full knowledge of the defendants; and number 11, "that by express provision and by every reasonable implication arising from the provision of said Mining Lease and Option to Purchase, the defendants Leatherman and Cope agreed to perform any and all acts reasonably necessary to perfect plaintiff's title to the leasehold estates. . ." The written lease-option does not contain an express agreement to assign the primary leases on the part of Leatherman and Cope, although as is hereinafter discussed a clear implication to this effect arises from the terms of the parties' agreement in view of provisions of the primary leases.

7. Stanolind Oil and Gas Co. v. Sellers, 174 F.2d 948 (10th Cir. 1949), cert. denied, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531, and Hunter v. Sutton, 45 Nev. 430, 205 P. 785 (1922), are relied upon by appellants for their contrary conclusion. *Stanolind* recognized an implied covenant that an oil and gas lessee would exercise reasonable diligence in the development of the leasehold and in the protection of it from undue drainage through wells on adjacent land. Whatever implied obligation there may have been for appellee to operate the lease, had the primary leases not been subject to assignment, is not

in issue in the case at bar. In *Hunter*, the contract was both executory and unilateral; no purchaser in the sense of being a vendee was involved, but only one who had undertaken to pay royalty for production for which he was not bound and for the opportunity of which he apparently had not paid any independent consideration.

8. "Q. (by counsel for defendants of plaintiff on cross-examination) : Did you have any understanding with Ozark Mahoney regarding milling of ores?

"Mr. Ward: Your Honor, I must object; we are going into the question of milling, marketing, royalties, so forth, that are not in the case. This case is limited to the question of a lease.

"The Court: What bothers me even more than that is what we do about the parol evidence rule? . . . Aren't you trying to vary the terms of the written agreement?

"Mr. Ward: No, sir, I am trying to examine the state of mind of Mr. Leatherman at the time of entering into the agreement." Then followed discussions about promissory representations after which the court stated :

" . . . Yes, I am aware of that, the restatement and a few other things, but my recollection is that the Colorado court has been pretty hard and fast on the past fact rule, but go ahead. I will overrule your objection, Mr. Barnhill. Really this is the trouble getting generous on ignoring pretrial orders. You get ready to try a case on what the parties have said are the issues, and then away we go. Let's go.

trine of Equator Mining and Smelting Company v. Guanella, 18 Colo. 548, 33 P. 613 (1893), renders signature of a written lease by a lessee unnecessary if the lessee in reliance upon the lease goes into possession and does substantial work on the leased premises. They question both that substantial work was done and that possession was taken by appellee. The transcript of the evidence, however, contains ample evidence of both.

■ Appellants' final contention is that the "Mining Lease and Option to Purchase" was voidable as a mere executory option. Leatherman and Cope at the time had only five year primary leases, rather than a succession of fifteen year leases or the fee title as suggested by the form of option incorporated into the parties' written agreement. The option price of $35,000 for purchase of the properties or a fifteen year extension of the leases made little sense unless possibly as an opportunity for plaintiff to eliminate payment of future royalties by paying the additional consideration. Appellants argue that "[t]he agreement patently indicates that the consideration (the $1,000) is given for a lease and is absent any evidence that consideration is tendered or received for the option." Were this so, it does not follow that the agreement between the parties as far as the five year terms of the primary leases were concerned was a mere option. On the contrary, there was an unconditional sublease of the property described in the primary leases for at least the term of five years therein specified, supported by a valuable consideration, i. e., the $1,000 payment in cash as well as the undertaking to pay an overriding royalty of 2½%.

Remaining unexecuted was only the purported option to buy, or renew for an additional fifteen year period, as the case may be—a somewhat academic prospect since Leatherman and Cope had no title or interest in the lands except for the five year terms of the primary leases. Any obligation with reference to the periods covered by the primary leases was not voidable at the election of the appellants.

This brings us, however, to a problem not directly presented in the briefs or specifically dealt with in the court's findings but one which lurks in the interstices of the record. The oral discussions and agreements of the parties to the extent disclosed by the evidence do not cover any fifteen year lease or renewal thereof, or any option to purchase for a consideration of $35,000, as the written agreement provides. They simply related to the acquisition by appellee from Leatherman and Cope of two primary leases in consideration of the payment of $1,000 and an overriding royalty of 2½%. Most pertinently the written lease-option contained no express provision for the assignment of the primary leases to the appellee.

Plaintiff's position is that "the document entitled Mining Lease and Option to Purchase effectively transferred and set over unto Whitelock all of the interests of defendants Leatherman and Cope in and to lease 2134/16–F and 2136/16–F and the lands covered thereby, albeit such document was not in a form required to evidence such change of ownership of record in the office of the State Board of Land Commissioners of the State of Colorado." The oral discussions of the parties, related circumstances and the provisions of the pri-

"Mr. Barnhill: I understand your Honor overruled the objection?

"The Court: Yes, might as well make a full record."

After thus being permitted to proceed with the examination, appellants' counsel abruptly turned to inquiry concerning plaintiff's possession of the property following the date of the written agreement. Later, on direct examination of

Leatherman, appellants' counsel asked him whether Whitelock mentioned anything not appearing in the "agreement". When Leatherman began to say what had been "indicated" and an objection upon this ground and by reason of the parol evidence rule was made by plaintiff's counsel, the court ruled: "We'll let him testify what he said, not what he indicated."

mary leases were consistent with the assignment of the primary leases. Indeed, it was thereby rendered rather plain that formal assignments of the primary leases must have been contemplated by the parties. The trouble is that the written agreement of the parties seems to negate any such idea by provision for ultimate purchase for additional consideration of the primary leases, their fifteen year extensions or the land itself. It appears probable that any conflicting terms were incorporated into the "Mining Lease and Option" by mutual mistake stemming from plaintiff's use of a form not designed for the particular transaction. No reformation of the terms of the written agreement was sought or ordered, although there is Colorado authority for reformation and enforcement of written contracts in the same action under somewhat analogous circumstances. [9]

In view of the fluid treatment of the issues by the trial court upon requests of the appellants, [10] the trial court might have been justified in deeming the pleadings and pre-trial order amended to conform to the proof supporting reformation. While as in Hill v. Stanolind Oil & Gas Co., *supra,* it did not pursue such a theory, we are of the opinion for reasons hereinafter indicated that it was justified in reaching the same result through finding an implied obligation from the "Mining Lease and Option" for appellants to formally assign the primary leases to plaintiff.

We can set to one side any difficulties relating to leases or options beyond the specific primary leases covered by the order of the lower court. The judgment appealed from did not cover any period or terms beyond those of the primary leases nor did it purport to affect any other future obligations of the parties *inter se*. Had appellants raised below a contention that the unconditional nature of the order of specific performance, ignoring as it did the reciprocal and continuing obligation to pay an overriding royalty for future production, was erroneous by reason of this omission itself, we would have been presented with an extended problem. It must be assumed, however, that all parties as well as the court interpreted and intended the judgment to be an order for specific performance to the extent of the required formal assignment without prejudice to other obligations which might arise between the parties pursuant to the terms of the written lease-option or without their merger into; or foreclosure as between the parties by, the ordered assignment.[11]

■ The parties were charged with knowledge of the provisions of Paragraph 10 of the primary leases. It thus was manifest that the only way the agreement between them could be rendered effective was for Leatherman and Cope to assign the primary leases to plaintiff on forms complying with the regulation of the Board of Land Commissioners, in accordance with Section 10 of the primary leases. Leatherman assured plaintiff that he was well acquainted with the Board and in effect would do anything necessary for its pur-

9. Mike Occhiato Mercantile Co. v. Allemannia Fire Insurance Co., 98 F.Supp. 888 (D.Colo.1951); Hill v. Stanolind Oil and Gas Co., 119 Colo. 477, 205 P.2d 643 (1949).

10. At the beginning of trial, counsel for appellants repeatedly suggested issues in addition to those specified in the pre-trial order. Upon objection by opposing counsel that these additional issues were not raised in the pleadings, the court said " . . . Let's just ignore the pleadings; lets try the lawsuit. If you need any more time for anything you are surprised by you may have it." Later in the trial when counsel for appellants sought to involve facts provable only by a witness not listed in the pre-trial order the court stated: "I will give you a choice. We will go back and live up to the pre-trial order strictly, or we will just let everybody run as they want. Which do you want?" Mr. Ward: "Let everybody run the way they want."

11. *See* Section 10 of the primary leases quoted in footnote 3. *Cf.* Kent v. Flickinger, 453 F.2d 955 (10th Cir. 1972).

poses. Since the Board would not recognize on its records any subleases but only the unconditional assignment of the primary leases in the event of a transfer of interest by the original lessees, the sole means by which the written lease-option could be rendered fully effective would be through the assignments of the primary leases. For these reasons we sustain the trial court's finding that "by reasonable implication" Leatherman and Cope had "agreed to perform any and all acts necessary to perfect plaintiff's title to the leasehold estates reflected in . . . the two primary Colorado Fluorspar Mining Leases". We think it implicit in that finding that the defendant's obligation extended to the execution of the formal assignments of the primary leases.

A jurisdictional question arising from an inspection of the face of the record must be resolved before concluding this opinion. Obviously if jurisdiction existed below it would have been based upon diversity of citizenship. 28 U.S.C. § 1332. With reference to such jurisdiction, the complaint, in addition to the requisite amount in controversy, alleged only that the plaintiff was a resident of the State of Utah, that the defendants Delbert Leatherman and W. D. Tripp were residents of the State of Colorado, and the defendant Wiley A. Cope was a resident of the State of Texas; the citizenship of neither party was stated nor can there be found elsewhere in the record any other allegation or proof of citizenship. The pertinent facts were not inquired into nor included in its findings by the trial court; it simply concluded generally that it "has jurisdiction over the subject matter of the action".

A federal court's jurisdiction must clearly appear from the face of a complaint or removal petition; otherwise, unless the action is forthwith dismissed, it is the duty of a court, having only limited trial or appellate jurisdiction, to assure itself that any subsequent proceedings are pursued within jurisdictional limitations[12] which must be strictly construed and applied.[13] In this construction and application, allegations of mere "residence" may not be equated with "citizenship" for the purposes of establishing diversity.[14] The present

12. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) ; F & S Construction Company v. Jensen, 337 F.2d 160 (10th Cir. 1964) ; Buell v. Sears, Roebuck and Co., 321 F.2d 468 (10th Cir. 1963).

13. Trapp v. Goetz, 373 F.2d 380 (10th Cir. 1966) ; F & S Construction Company v. Jensen, *supra*; City of Lawton, Oklahoma v. Chapman, 257 F.2d 601 (10th Cir. 1958).

14. Kinney v. Columbia Savings & Loan Ass'n, 191 U.S. 78, 24 S.Ct. 30, 48 L.Ed. 103 (1903) ; Everhart v. Huntsville Female College, 120 U.S. 223, 7 S.Ct. 555, 30 L.Ed. 623 (1887) ; Parker v. Overman, 59 U.S. (18 How.) 137, 15 L.Ed. 318 (1855) ; Hendrix v. New Amsterdam Casualty Company, 390 F.2d 299 (10th Cir. 1968) ; Kelleam v. Maryland Casualty Co. of Baltimore, 112 F.2d 940 (10th Cir. 1940), rev'd on other grounds, 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899 (1941). The case last cited, while expressly recognizing that "an allegation that a party defendant is a resident of a state is not equivalent to an allegation of 'citizenship' " and is "insufficient to confer jurisdiction upon the District Court", indicates under certain circumstances that proof that a person is a resident of a state may prima facie indicate that he is a citizen of that state. *See also* Walden v. Broce Construction Company, 357 F.2d 242 (10th Cir. 1966). Jurisdiction in *Kelleam* was sustained notwithstanding failure of the complaint properly to allege the citizenship of the parties because of a finding by the trial court after hearing that diversity of citizenship actually existed. The allegations of residence rather than citizenship were treated in effect as amended to conform to proof. *Cf.* Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). In the case at bar there was neither proof nor finding of diversity of citizenship; only the general conclusion that the court had jurisdiction, which Mitchell v. Parham, 357 F.2d 723 (10th Cir. 1966), teaches is insufficient.

record is insufficient to sustain the jurisdiction of the court below or the jurisdiction of this court except for the application of jurisdictional limitations.

■ This case has proceeded thus far without notice of the jurisdictional problems. It does appear not unlikely that the existence of diversity of citizenship can be established. In the interest of the conservation of judicial resources, yet with due regard to the minimal requirements of jurisdiction, we have completed our review of the entire case as indicated, and we affirm on condition that plaintiff within twenty days after the filing of this opinion file in the court below, and by certified copy with this court, a verified amendment to paragraph 1 of his original complaint alleging, in addition to the residences pertinent to venue, that at the time of the filing of the original complaint plaintiff was a citizen of the State of Utah, the defendants Leatherman and Tripp were citizens of the State of Colorado and the defendant Cope was a citizen of the State of Texas (or other specific facts demonstrating complete diversity of citizenship between the parties plaintiff and defendant at the time of the filing of the original complaint).[15] In the event such an amendment is not timely accomplished, the Clerk of this court is directed promptly to calendar the case here for further consideration of reversal and remand to the court below with direction that it be dismissed for lack of jurisdiction.[16]

Affirmed on the condition stated.

15. *See* McNutt v. General Motors Acceptance Corporation, *supra*; Buell v. Sears, Roebuck and Co., 321 F.2d 468 (10th Cir. 1963); Kern v. Standard Oil Company, 228 F.2d 699 (8th Cir. 1956); 28 U.S.C. § 1653; Fed.R.Civ.P. 15. *Cf.* Barrow Development Co. v. Fulton Insurance Co., 418 F.2d 316 (9th Cir. 1969).

16. *Cf.* Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939);

Henneford v. Northern Pac. Ry. Co., 303 U.S. 17, 58 S.Ct. 415, 82 L.Ed. 619 (1938); United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263 (1936); Everhart v. Huntsville Female College, *supra*; F & S Construction Company v. Jensen, *supra*; Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24 (8th Cir. 1964).