Stephen BAIR, Plaintiff,

v.

Roger G. PECK, M.D.; Perry Smith, M.D.; Great Bend Internists, P.A.; and Alderson, Schuckman, and Smith, P.A.

No. 87–1177–C.

United States District Court,
D. Kansas.

May 8, 1990.

Casey R. Law, Turner & Boisseau, Great Bend, Kan., for plaintiff.

James Z. Hernandez, Wichita, Kan., for Peck and Smith.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and the defendants Great Bend Internists', P.A. and Alderson, Schuckman & Smith's, P.A. motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or in the alternative, for summary judgment pursuant to Fed.R. Civ.P. 56. Plaintiff brings this medical malpractice action asserting the court has subject matter jurisdiction on the basis of diversity of citizenship as set forth at 28 U.S.C. § 1332. If, as the plaintiff alleges, he was a citizen of Colorado and the defendants were citizens of Kansas at the time this suit was filed, then complete diversity between the plaintiff and each of the defendants would exist as required by statute, 28 U.S.C. § 1332(a)(1), and case law, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

For purposes of diversity jurisdiction, one is considered a citizen of the state in which he is domiciled. *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir.1983). In this context, citizenship and domicile are synonymous, *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555 (5th Cir. 1985). But domicile and residence are not necessarily synonymous, *Mississippi Choctaw v. Holyfield*, 490 U.S. ——, ——, 109 S.Ct. 1597, 1607–1608, 104 L.Ed.2d 29, 46 (1989), for domicile is the combination of physical presence in a place (residence) and a certain state of mind, that is, the intent to remain there. *Id.* There is no minimum period of residence required. *Morris v. Gilmer*, 129 U.S. 315, 328, 9 S.Ct. 289, 293, 32 L.Ed. 690 (1889). The requisite intention is to remain at that place for an unlimited or indefinite period of time. *Freeman*, 754 F.2d at 555; *Crowley*, 710 F.2d at 678. Residence and intent are inextricable elements of domicile. If unaccompanied by the necessary intent, residence alone is not determinative of citizenship. *Gilbert v. David*, 235 U.S. 561, 569–70, 35 S.Ct. 164,

166–67, 59 L.Ed. 360 (1914). For the same reason, the "mere mental fixing of citizenship is not sufficient." *Walden v. Broce Construction Company*, 357 F.2d 242, 245 (10th Cir.1966).

The determination of diversity jurisdiction is generally made from the complaint. *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir.1972). When the allegations are challenged, the party asserting diversity jurisdiction has the burden of proving them by a preponderance of the evidence. *Mid–Continent Pipe Line Co. v. Whiteley*, 116 F.2d 871, 873 (10th Cir.1941); *see McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). This raises mixed question of law and fact for the trial court to decide. *Crowley*, 710 F.2d at 678. In determining diversity jurisdiction, domicile is assessed as of the date the complaint is filed. *Johnston v. Cordell National Bank*, 421 F.2d 1310, 1311 (10th Cir.1970). If established at this critical time, it is immaterial that diversity is lost because of a subsequent change in domicile. *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957).

A presumption has been recognized favoring an established domicile over a newly acquired one. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir.1986); *Abercrombie v. Sigler*, No. 87–2358–S at 3, 1988 WL 212479 (D.Kan. Aug. 25, 1988). At the same time, courts have allowed a presumption of domicile upon proof of residency. *Kelleam v. Maryland Casualty Co. of Baltimore*, 112 F.2d 940, 943 (10th Cir.1940), *rev'd on other grounds*, 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899 (1941). These presumptions only shift the burden of going forward with the evidence as the ultimate burden of proof always remains with the party asserting diversity jurisdiction. *Lew*, 797 F.2d at 751. Because the facts of the case *sub judice* meet both of these countervailing presumptions, their impact is limited with the focus instead directed to whether the plaintiff is able to sustain his ultimate burden of proof.

When the plaintiff has recently changed residence before filing suit, the courts have applied some additional rules in their determination. The question of a new domicile is determined by the same two factors of residence and intent to remain indefinitely, but the intent need not be to remain permanently. *See Crowley*, 710 F.2d at 678. It is enough to have a "floating intention" to stay indefinitely and also have the general desire to return to the former domicile at some undetermined point of time. *Crowley*, 710 F.2d at 678. It is not sufficient to have the existing intention to return upon the happening of a reasonably foreseeable event. *Gates v. Commissioner of Internal Revenue*, 199 F.2d 291, 294 (10th Cir.1952). Consequently, it is often presumed a student attending an out-of-state university intends to return to his or her home state upon completion of studies. *Bradley v. Zissimos*, 721 F.Supp. 738, 939 n. 3 (E.D.Pa.1989); *Lyons v. Salve Regina College*, 422 F.Supp. 1354, 1357 (D.R.I.1976), *rev'd on other grounds*, 565 F.2d 200 (1st Cir.1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978). "It is in the light of this presumption that courts evaluate evidence which might, standing alone, indicate a contrary intention." *Bradley*, 721 F.Supp. at 739 n. 3 (citations omitted). Under the circumstances of a recent change in residence, courts have often looked to objective indicia of intent, such as the place of employment, driver's license, automobile registration, bank accounts, tax payments, location of personal property, and voting practices. *Lew v. Moss*, 797 F.2d at 750; *Abbott v. United Venture Capital, Inc.*, 718 F.Supp. 823, 826 (D.Nev.1988). Statements of intent are accorded minimal weight relative to these objective factors. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d at 556.

Plaintiff was born and raised in Kansas. He attended the University of Kansas for the fall semester of 1985 until his illness in November of that year. He returned to the university in April of 1986. During the summer of 1986, plaintiff lived with his family in Great Bend, Kansas. When fall came, he enrolled in and attend-

ed the University of Kansas. In December of 1986, plaintiff obtained a Colorado driver's license using the address of his parent's friends who lived in Colorado. Plaintiff never lived at that address but used it to qualify for in-state tuition at the University of Colorado.

Upon his own decision, plaintiff moved to Boulder, Colorado and attended the University of Colorado in January of 1987. He states as the reasons for his decision—the quality of that university's physics program and his long-time wish to live in Colorado. Plaintiff took all of his personal belongings with him to Colorado. Plaintiff filed his complaint in this action on March 30, 1987. From January to May of 1987, plaintiff attended the university, lived in university housing, and was employed by the university. Plaintiff then moved to 943 East 15th Street, Boulder, Colorado where he lived until August of 1987. He worked for Carico International during June and July of 1987.

Plaintiff then moved to Keystone, Colorado and began working for the ski resort instead of going back to the University of Colorado. He represented to Keystone that his permanent address was his parent's home in Great Bend, Kansas, and he listed the same address on his employee's withholding allowance certificate prepared for federal income tax purposes. Anticipating a move because of his job at Keystone and desiring that important mail would always reach him wherever he might reside, plaintiff made his parent's address his permanent address for employment and tax purposes. In November of 1987, he started work at the Wendy's store in Dillon, Colorado and lived there in his own apartment. Plaintiff was registered to vote in Colorado.

After seriously injuring his knee in a skiing accident in January of 1988, plaintiff decided to have the necessary knee surgery performed by the same physician in Wichita, Kansas who had performed a similar operation on his sister's knee a year earlier. Plaintiff recuperated from the knee surgery at his parent's home in Great Bend, Kansas. His personal belongings were moved back to Great Bend sometime in February of 1988. For the 1987 tax year, plaintiff filed a Colorado state tax return as a resident of Colorado.

In June of 1988, plaintiff stayed for two weeks with some friends in Lawrence, Kansas, while he worked in Kansas City, Missouri and looked for a place to live there. He later moved to Liberty, Missouri and held various jobs in Liberty and Kansas City. For the 1988 tax year, plaintiff filed both a Colorado state tax return and a Missouri state tax return. In 1988, plaintiff changed his voter registration to Missouri after moving there.

Defendants urge the court to view this case as the classic example of a student attending college in another state, working part-time jobs and staying with friends while at all times considering his parent's residence as his permanent address and domicile. Plaintiff rejoins pointing to his desire to live in Colorado, his decision to remain there and work even though not attending school for the fall semester, and his need for medical treatment as the only reason for his return to Kansas.

Though a close case, the court believes the Plaintiff has sustained his burden of showing by a preponderance of the evidence that he was citizen of Colorado at the time the lawsuit was filed. The presumption that plaintiff would return after his studies were completed was disproved by the fact that he stayed and worked in Colorado even without attending school. His intent for staying in Colorado appeared indefinite and the circumstance which brought him back to Kansas was not the predetermined occurrence of an event which was reasonably foreseeable. The objective indicia of employment, driver's license, personal property, voter registration and state taxes also weigh in favor of citizenship in Colorado. Moreover, when plaintiff returned to Kansas, it was for the limited purpose and short time of recuperating from knee surgery. He then left home and began living and working in Missouri.

■ Though the lives of young adults are sometimes viewed as transient by those

of us. who are more settled in our ways, it would be unfair to generalize that they lack the intent to make their own residence their domicile because they have only so soon left the comforts of their parent's home. When a young adult has taken those steps which objectively show a commitment for an indefinite period of time to become a member of the community in which he or she resides, the courts should not be reluctant to infer a domicile. Reliance on parents during this time for medical exigencies and a permanent mailing address is understandable and does not significantly detract from the weight of the other objective factors.

The court finds that Stephen Bair was a citizen of Colorado as of March 30, 1987, the filing date of the complaint. Defendants' motion to dismiss for lack of diversity jurisdiction is denied.

Defendants, Great Bend Internists, P.A. and Alderson, Schuckman & Smith, P.A., also move for judgment on the pleadings or, in the alternative, for summary judgment on the ground that they can have no vicarious liability as a result of K.S.A. 40–3403(h) (1987), which provides:

> A health care provider who is qualified for coverage under the fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund. The provisions of this subsection shall apply to all claims filed on or after the effective date of this act.

Without contesting the applicability of this provision to the moving defendants, plaintiff responds only by asserting that it is unconstitutional as violating Sections 1, 5, and 18 of the Bill of Rights of the Kansas Constitution. Both parties have briefed the constitutionality of K.S.A. 40–3403(h).

By its own research, the court has learned that Chief Judge O'Connor certified this very issue to the Kansas Supreme Court on July 12, 1989, in the case of *Balsover v. Sapperstein et al.*, No. 89–2251–O, 1989 WL 85339 (D.Kan. July 12, 1989). Because the case *sub judice* has no final pretrial order and no imminent trial setting, this court believes the prudent course is to await the Kansas Supreme Court's ruling on this matter of Kansas constitutional law, instead of speculating as to what the seven justices will agree to on another of the controversial issues arising from the medical malpractice legislation. The court, therefore, takes the motion for judgment on the pleadings under advisement pending the decision of the Kansas Supreme Court in the case of *Balsover v. Sapperstein, et al.*

IT IS THEREFORE ORDERED that the defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) is denied;

IT IS FURTHER ORDERED that the motion for judgment on the pleadings brought by defendants, Great Bend Internists, P.A. and Alderson, Schuckman & Smith, P.A., is taken under advisement pending the decision of Kansas Supreme Court on the question certified in *Balsover v. Sapperstein, et al.*, No. 89–2251–O (D.Kan. July 12, 1989).