**Leroy CRESSLER, Plaintiff,**

v.

**John Rapp NEUENSCHWANDER, M.D., and John Rand Neuenschwander, M.D., Defendants.**

**Civil Action No. 95–CV–1034–DES.**

United States District Court,
D. Kansas.

June 20, 1996.

Thomas Clayton Boone, Hays, KS, Gene E. Schroer, Schroer, Rice, P.A., Topeka, KS, for Larry E. Cressler.

Matthew L. Bretz, Gilliland & Hayes, P.A., Hutchinson, KS, for John Rapp Neuenschwander, M.D. and John Rand Neuenschwander, M.D.

Harry M. Bleeker, Watkins, Calcara, Rondeau & Friedeman, P.A., Great Bend, KS, for Ross E. Stadalman, M.D.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 71).

### I. BACKGROUND

Mr. Cressler filed this action on February 2, 1995. The plaintiff claimed, among other things, that Dr. John Rapp Neuenschwander, Dr. John Rand Neuenschwander, and Dr. Ross E. Stadalman negligently failed to diagnose and treat a malignant melanoma on his right foot. The plaintiff invoked the court's jurisdiction pursuant to 28 U.S.C. § 1332, stating that the defendants were residents of the State of Kansas, and that the plaintiff was a resident and citizen of the State of Colorado. On January 29, 1996, the plaintiff filed an amended complaint, dismissing Dr. Stadalman as a defendant.

The plaintiff claims that he moved from Kansas to Limon, Colorado, on or about October 1, 1994, and that he was a domiciliary and resident of Colorado when he filed his original complaint in February 1995. Mr. Cressler states that he changed his domicile to Limon in order to be closer to Denver, where he was receiving medical treatment for his melanoma.

The defendants argue that the plaintiff never changed his domicile to Colorado. The defendants assert that because they and the plaintiff are all citizens of Kansas, diversity of citizenship under 28 U.S.C. § 1332(a)(1) is lacking, and the case must be dismissed for lack of subject matter jurisdiction.

## II. *DISCUSSION*

■ 28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 ... and is between—(1) citizens of different States...." For purposes of diversity jurisdiction, a person is considered a citizen of the state in which he is domiciled. *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). Domicile is established by physical presence in a place accompanied by an intent to remain there. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). A change of domicile is valid even if done for the purpose of creating diversity, *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir.1992) (citing 1 James W. Moore, *Moore's Federal Practice* ¶ 0.74[3.-4] (2d ed. 1996)), and no minimum period of residence is required. *Morris v. Gilmer*, 129 U.S. 315, 328, 9 S.Ct. 289, 293, 32 L.Ed. 690 (1889).

■ Because the federal courts are courts of limited jurisdiction, however, there is a presumption against the existence of diversity jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Once allegations of diversity have been challenged, the party invoking federal jurisdiction must prove citizenship by a preponderance of the evidence. *Mid–Continent Pipe Line Co. v. Whiteley*, 116 F.2d 871, 873 (10th Cir.1940). Courts have also recognized a presumption of an established domicile over a newly acquired one. *Bair v. Peck*, 738 F.Supp. 1354, 1356 (D.Kan.1990). On the other hand, the place where a person lives is assumed to be his domicile unless the evidence establishes the contrary. *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 309–10, 86 L.Ed. 329 (1941); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir.1994) (a person's residence is his prima facie domicile).

■ Mr. Cressler argues that while the defendants may have demonstrated that he maintains residences in both Colorado and Kansas, he has but one domicile, which is located in Limon, Colorado. Where it appears that a party may have more than one residence, the court should use a "totality of evidence" approach to ascertain the party's intended domicile. *Hicks v. Brophy*, 839 F.Supp. 948, 950–51 (D.Conn.1993). Factors which courts often consider in determining a party's intent include the following:

1. Whether or not an individual votes where he claims domicile;

2. The manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home;

3. Whether his family and dependents have moved to the new residence;

4. Whether an individual's belongings have been moved to the new residence;

5. One's relationships with churches, clubs, and investments in the new residence;

6. Whether or not a place of abode is retained in the old state of residence;

7. Whether or not investments in local property or enterprise attach one to the former residence;

8. Whether one retains affiliations with professional, religious and fraternal life of the former community; and

9. What domicile is claimed for tax purposes.

*Computer People, Inc. v. Computer Dimensions Int'l, Inc.*, 638 F.Supp. 1293, 1295 (M.D.La.1986) (citing *District of Columbia v. Murphy*, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941)).

The parties have applied the above factors to reach conflicting conclusions. The court, having examined the pleadings, affidavits, and depositions of record, agrees with the plaintiff that the relevant factors indicate that the plaintiff's domicile lies in Colorado. *See* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3612, at 542 (2d ed. 1984) (noting materials court may consider in determining domicile).

### A. *Voting*

This first factor, considered by many courts to be of special importance, weighs in the plaintiff's favor. *See, e.g., Griffin v. Matthews*, 310 F.Supp. 341, 343 (M.D.N.C.1969), *aff'd*, 423 F.2d 272 (4th Cir.1970); *Jardine v. Intehar*, 213 F.Supp. 598, 600 (S.D.W.Va.

1963) (voter registration raises presumption of citizenship). The plaintiff states in his affidavit that he registered to vote in Colorado in the fall of 1994, and that he has not voted in Kansas since moving to Limon.

## B. *Manner in which individual lives*

Courts often examine the "manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home." The defendants point out that while Mr. Cressler owns two houses in Kansas, he rented a mobile home on a month-to-month basis upon his purported move to Colorado. According to the defendants, such a change in lifestyle indicates, at most, a temporary residence in Colorado.

The plaintiff states that when he relocated to Colorado in October 1994, he intended to purchase a conventional residence as soon as he could find a suitable property without steps and with wheelchair access. The plaintiff also represents that in January 1996, he did in fact purchase a home in Limon.

■ Whether diversity exists is determined at the time an action is commenced. *Freeport–McMoRan, Inc. v. K.N. Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 859–60, 112 L.Ed.2d 951 (1991). The relevant time period for our inquiry is therefore February 1995, at which time the plaintiff still rented a mobile home. Such a "manner of living" would seem inconsistent with the plaintiff's lifestyle in Kansas. Mr. Cressler's claim that it took time to locate an accessible residence, however, seems wholly plausible to the court. The plaintiff's subsequent purchase of a residence in Limon also lends credence to the plaintiff's claim that he intended from the beginning to purchase a home. The court therefore finds that the plaintiff's "manner of living" in Colorado does not contradict his claim of a Colorado domicile.

## C. *Whether plaintiff and his family have moved to new residence*

The defendants assert that the plaintiff continued to provide his Kansas address to various third parties after October 1994, thereby demonstrating that he still resided in Kansas. The defendants also refer the court to the fact that the plaintiff had prescriptions filled in Kansas through February 1995.

Mr. Cressler, however, has provided the court with numerous receipts from businesses in Limon, indicating his physical presence in the community. The plaintiff has also produced documentation of telephone, television cable, and newspaper service in Limon dating from 1994. The court finds that while the defendants have shown that the plaintiff continued to maintain a Kansas residence after February 1995, the plaintiff has proven that he also established a residence in Colorado.

## D. *Individual's belongings moved to new residence*

The defendants refer the court to Mr. Cressler's July 11, 1995, deposition. The plaintiff testified that he maintained utility service at his log cabin in Kansas, that most of his furniture remained there, and that there was food in the refrigerator.

Mr. Cressler also testified, however, that he purchased new furniture for his Limon home, and the plaintiff provided several reasons for leaving many of his personal belongings in Kansas: the inability to move all of his belongings to Colorado before he bought a house there; the desire to divide some of the belongings among his children in Kansas; and the need to maintain a place for himself, his wife, and his daughter to stay when visiting in the area. The plaintiff also states that the Kansas residence is used by crews employed to harvest his crops. Again, the defendants have only shown that the plaintiff maintains a residence in Kansas, which the plaintiff does not dispute.

## E. *Relationships with churches, clubs, and investments at new residence*

The plaintiff established a checking account in Limon in October 1994, and began having his Social Security checks deposited there. As for church and club affiliations, the plaintiff has apparently begun attending church in Limon only recently. The evidence of Mr. Cressler's relationships in Colorado is sketchy, and certainly not conclusive on the issue of the plaintiff's domicile.

### F. *Whether place of abode retained in old state of residence*

Mr. Cressler has clearly retained a residence in Kansas. The plaintiff submits that he has maintained the residence in Sheridan County, Kansas, for farming and business purposes. The plaintiff owns farm property in Kansas, which he leases to his son and other parties, and also various rental properties.

■ Although a person may have only one domicile for purposes of determining state citizenship, he may have more than one residence. *Dyer v. Robinson,* 853 F.Supp. 169, 172 (D.Md.1994). Thus, while the plaintiff's retention of property in Kansas is relevant to our inquiry, it is not determinative.

The defendants argue, however, that the plaintiff's Kansas residence is his actual domicile. The defendants place particular emphasis on the plaintiff's telephone and bank records. The plaintiff has maintained a bank account in Kansas since commencing this action, and telephone records indicate a high level of activity in Kansas through June 1995.

Like the court in *Hicks v. Brophy,* however, we find the fact that the plaintiff has maintained bank accounts and telephone service at the location of his second residence "hardly surprising." 839 F.Supp. at 952. Mr. Cressler admits that his wife continued to work in Kansas on a part-time basis following their move to Colorado, and that she stayed at their Kansas residence in connection with her employment. The plaintiff also states that harvest crews and his children have access to the Kansas residence. The plaintiff submits that most of the telephone activity at his Kansas address since October 1994 is attributable to these other persons. As for his checking account in Kansas, the plaintiff explains that it is used for the purpose of collecting income from his Kansas holdings.

### G. *Investments in property at former residence*

As stated above, the plaintiff continues to own real estate in Kansas. The plaintiff leases out his farmland, however, and employs a manager for his apartment rentals. The court does not believe that the plaintiff was required to divest himself of his income-producing property in Kansas in order to establish a domicile in Colorado.

### H. *Affiliations with professional, religious and fraternal life of former community*

Mr. Cressler admits that as of July 1995, he remained a member of various organizations in Kansas. The plaintiff also represents, however, that he has not actively participated in any of these groups since he moved to Colorado. The plaintiff's professional, religious, and social connections to Kansas do not constitute strong evidence of a continuing Kansas domicile.

### I. *What domicile is claimed for tax purposes*

Finally, the defendants make much of the fact that on February 23, 1995, twenty-one days after filing this lawsuit and claiming to be a resident and citizen of Colorado, the plaintiff claimed Kansas residency on his 1994 Kansas tax return. Kan.Stat.Ann. § 79–32,128(a), however, provides that an individual who is a resident of Kansas for part of a year may elect to report his Kansas tax as if he were a resident for the entire year. The plaintiff lived in Kansas until October 1994, and earned all of his 1994 income in Kansas. The fact that he filed his 1994 tax return as a resident of Kansas is not inconsistent with his acquisition of a Colorado domicile in October 1994.

In summary, the defendants have produced much evidence concerning the plaintiff's continued residence in Kansas. The plaintiff has demonstrated, however, that he established a new residence in Limon, Colorado, in October 1994. For all of the defendants' assertions as to the plaintiff's ties to Kansas, the defendants have done little to refute the plaintiff's physical presence in Colorado as of the commencement of this suit in February 1995. *See Krasnov v. Dinan,* 465 F.2d 1298, 1300 (3d Cir.1972) (where one lives is prima facie evidence of domicile). Furthermore, the preceding analysis of the relevant factors demonstrates the plaintiff's intent to remain in Colorado indefinitely. As noted above, one's domicile is determined by the concurrence of physical presence in a

place, and the intent to remain there. *Mississippi Choctaw*, 490 U.S. at 48, 109 S.Ct. at 1608. We therefore conclude that the plaintiff has shown that he is a domiciliary of Colorado for purposes of establishing diversity of citizenship.

**IT IS THEREFORE BY THE COURT ORDERED** that defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 71) is denied.