Blake Elliot STUCKY, a minor, By and Through Blaine E. STUCKY and Teresa E. Stucky, his father and mother, natural guardians, and next friends; and Blaine E. Stucky, and Teresa E. Stucky, individually, Plaintiffs,

v.

Michael N. BATES, M.D., and Newton Medical Center, Defendants.

No. CIV. A. 96–1036–JTM.

United States District Court, D. Kansas.

April 24, 1998.

Anne H. Pankratz, Andrew W. Hutton, Hutton & Huuton, Wichita, KS, for Plaintiffs.

Eldon L. Boisseau, David W. Steed, Turner & Boisseau, Chartered, Wichita, KS, Peter G. Collins, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, for Defendant Michael N. Bates.

BK Christopher, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Kansas City, MO, Kristopher A. Kuehn, Blackwell, Saunders, Matheny, Weary & Lombardi L.L.P., Overland Park, KS, for Defendant Newton Medical Center.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This is a medical malpractice action in which the plaintiff invokes the court's diversity jurisdiction. The defendant Michael N. Bates, M.D., moves to dismiss the action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants are citizens of Kansas, and defendant Bates argues the plaintiffs were residents of Kansas at the time this action was filed. Plaintiffs contend they were residents of Missouri at the time this action was filed. The court has reviewed the parties' submissions and the applicable law and is prepared to rule.

Blaine Stucky and his wife Teresa Stucky were residents of Newton, Kansas when their son Blake Stucky (Blake) was born on June 25, 1993. Blake suffers from various ailments, which his parents attribute to medical negligence on the part of defendant Bates during Blake's birth. Plaintiffs claim they moved to Kearney, Missouri (just outside Kansas City) on or about October 1, 1995. The Stuckys testified they moved to the Kansas City area to obtain medical care for Blake. The Stuckys rented a home in Kearney.

In November 1995, the Stuckys placed their home in Newton for sale. The Stuckys spent time in both Kansas and Missouri in the months following their move to Missouri. According to charge card records submitted by the defendants, the Stuckys made numerous purchases at Wichita and Newton, Kansas area businesses in 1996, after purportedly moving to Missouri.

After moving, the Stuckys registered to vote in Missouri, although they did not vote in the 1996 general election. In November 1995, Blaine and Teresa Stucky applied for and received Missouri drivers licenses. The Stuckys opened a checking account at a Missouri bank in October 1995 using their Kearney address. The Stuckys obtained library cards in Missouri. On their individual income tax returns for 1995, the Stuckys listed the Kearney address as their residence. The Kearney address was also used for medical/insurance bills and correspondence.

This case was filed on January 29, 1996.

Blake Stucky received medical care at Children's Mercy Hospital on a number of occasions, starting in February 1996.

On April 1, 1996, the Stuckys' six month lease on the Kearney house expired and the Stuckys renewed their lease for one year. On April 14, 1996, the Stuckys received their first offer of purchase for their home in Newton. The Stuckys accepted that offer the next day. The sale transaction was closed in May 1996. In his deposition in June 1996, Blaine Stucky testified they had no existing intention at that time to return to Kansas.

In December 1996, the Stuckys returned to Kansas and are renting a home in Moundridge, Kansas, only a few miles from Newton. The Moundridge home is owned by F & S Development, a residential real estate development company in which Blaine Stucky is a partner. The home was built as a "spec" home. When the home was not sold, it was offered to the Stuckys at a favorable rental rate, less than the rental on their Kearney home. The Stuckys breached their lease on their Kearney home and moved back to Kansas.

Various items submitted by the defendant indicate the Stuckys were still living in Kansas in October and November 1995. The Stuckys' caseworker made home visits to the Stuckys' Newton home on October 5, 1995 and November 9, 1995. The caseworker's November 1995 notes indicate the family had their home on the market and planned to move to Kearney in the "near future." Notes from December 26, 1995 indicate the Stuckys' home was still on the market and they would continue to reside in Kansas until their home was sold. Exhibit C to Defendant's Reply, Doc. 158. On January 22, 1996, Blaine Stucky signed a termination of services notice, terminating Blake's relationship with the State of Kansas Department of Social and Rehabilitation Services, because Blake "is moving out of state." Exhibit D to Defendant's Reply. In October, November and December 1995, however, caseworker notes indicate that Blaine and Teresa Stucky were already exploring the possibility of applying for medical care benefits in Missouri. Exhibit C to Defendant's Reply.

Additional caseworker notes indicate that in December 1995, Blaine was working in both Newton and Kearney and Blaine was pursuing business opportunities in Kearney. *Id.* Blake's file was closed in January 1996, effective December 31, 1995, due to Blake not meeting residence requirements. *Id.*

However, material submitted by plaintiffs indicate that Blaine Stucky signed a rental application on September 20, 1995 for the rental home in Kearney, Missouri. The plaintiffs began leasing the residence October 1, 1995. Gas service appears to have been established in October 1995.

Blaine Stucky had business cards printed with his Kearney address and phone number for his business, Central Fencing and Decking. In February and April 1996, Blaine Stucky placed ads in the local newspaper for his business.

■ 28 U.S.C. § 1332(a)(1) provides that the federal district courts have jurisdiction over civil actions between "citizens of different States." The existence of diversity jurisdiction is usually determined from the complaint. *Whitelock v. Leatherman,* 460 F.2d 507, 514 (10th Cir.1972). However, when the allegation of diversity is challenged, the party asserting jurisdiction has the burden of proving diversity by a preponderance of the evidence. *Bair v. Peck,* 738 F.Supp. 1354, 1355 (D.Kan.1990). The court looks to the time the complaint was filed to determine whether diversity jurisdiction exists. *Freeport–McMoRan, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991).

■ For purposes of diversity jurisdiction, one is a citizen of the state in which he is domiciled. *Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir.1983). Domicile is the combination of physical presence in a location and an intent to remain there indefinitely. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). There is a presumption favoring an established domicile over a newly acquired one. *Bair,* 738 F.Supp. at 1356. In determining where a person is domiciled, the court considers the totality of the evidence, *Cressler v. Neuenschwander,* 930 F.Supp. 1458, 1460 (D.Kan.1996), but pays particular attention to objective indicia of intent "such as the place of employment, driver's license, automobile registration, bank accounts, tax payments, location of personal property, and voting practices." *Callicrate v. Farmland Indus., Inc.,* 1995 WL 463664, *5 (D.Kan. 1995). Other factors to consider are the plaintiff's social attachments in both states, whether he retains a place of abode or investments in local property or enterprise in the old state of residence, whether he has taken his family and his belongings with him, and the manner in which he lives (i.e., whether he rents or buys a home). *Cressler,* 930 F.Supp. at 1460.

■ A change of domicile is valid even if done for the purpose of creating diversity, and no minimum period of residency is required. *Id.*

The facts of this case are similar to those in *Cressler,* 930 F.Supp. 1458. The plaintiff in that case claimed he moved from Kansas to Limon, Colorado because he was receiving medical treatment in Denver. *Id.* at 1459. The plaintiff voted in Colorado in the most recent election. *Id.* at 1461. The court found he gave a plausible explanation for why he rented a home in Colorado and continued to own a house in Kansas and why he left many of his belongings behind. *Id.* at 1461. Although there were pharmaceutical receipts from Kansas and plaintiff gave his Kansas address to third parties, the court noted there were also numerous receipts from Colorado businesses. *Id.* The court noted that plaintiff had subscribed to a Colorado newspaper and had opened a bank account in Colorado. *Id.* His social connections were sketchy in both states. *Id.* He retained membership in some Kansas organizations, but did not continue to participate in the organizations' activities. *Id.* at 1462. On the basis of those facts, the court found plaintiff had residences in both Kansas and Colorado, but he had proved by a preponderance of the evidence that he had changed his domicile to Colorado. *Id.* at 1460, 1463.

■ The court finds the plaintiffs in this case have overcome the presumption against a change of domicile and have established by a preponderance of the evidence that their domicile was in Missouri by the time the complaint was filed. The court finds particularly persuasive that Blaine and Teresa

Stucky registered to vote in Missouri, had opened a bank account in Missouri by October 1995, and by November 1995 had obtained Missouri drivers licenses. The plaintiffs also claimed to be Missouri residents when filing their 1995 income tax returns. Plaintiffs rented a home in Kearney, but did this prior to selling their home in Newton. The plaintiffs did not retain their previous residence in Kansas to use as a residence. The plaintiffs moved to the new residence and took all of their belongings with them.

The plaintiffs did not establish a relationship with a new church or other social contacts while in Kearney, but have offered a plausible explanation for their failure to do so. Blaine and Teresa Stucky must provide constant care to Blake and had no family in Kearney to assist them. While Blaine Stucky maintained interests in his businesses in the Newton, Kansas area, he also presented evidence of his attempts to start up a new construction business in Kearney.

While it appears that the Stuckys may not have changed their domicile in October 1995 as they have claimed, they had changed their domicile to Missouri by the time this action was filed in January 1996. Accordingly, the court denies the defendant's motion to dismiss.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant Bates's amended motion to dismiss (Doc. 145) is hereby denied.